ORIGINAL   E-FILED
Monday, 12 September, 2005, 04:41:29 PM
Clerk, U.S. District Court, ILCD



UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

FILED

SEP 1 2 2005

JOHN M. WATERS, Clerk
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

JOSEPH THOMPSON,                )
            Petitioner,         )
                                )       No. ___05Y267_____
        v.                      )       (To be supplied by court clerk)
                                )
UNITED STATES PAROLE COMMISSION, )      Petition for a writ of habeas corpus
            Respondant.         )       by a federal prisoner in custody
                                        pursuant to 28 U.S.C. §2241.


## PETITION FOR A WRIT OF HABEAS CORPUS

Now comes the petitioner, JOSEPH THOMPSON, acting pro se
and respectfully petitions this Honorable Court for a writ of
habeas corpus pursuant to Title 28 U.S.C. §2241. In support of
this request the following is stated.

### JURISDICTION

Petitioner is a District of Columbia prisoner confined at
the Federal Correctional Institution at Pekin Illinois by
virtue of a sentence imposed by Superior Court Of The District
Of Columbia and under the jurisdiction of the United States
Parole Commission for a violation of the laws of the United
States of America. The Federal Correctional Institution at
Pekin Illinois lies within the venue of this Honorable Court
therefore this court has jurisdiction pursuant to Title 28
U.S.C. §2241 (Habeas Corpus).

The petitioner challenges the actions of the United States

1.

Parole Commission in abusing its discretionary powers. "Actions
of parole commission may be challenged only in habeas corpus
proceedings initiated pursuant to 2241 in district in which
individual is incarcerated". Fernandez v. U.S., 941 F.2d 1488
(11th Cir. 1991).

## STATEMENT OF THE CASE

On 5/19/1999, petitioner was charged in the District Of
Columbia with possession with intent to distribute Cocaine.
On 6/12/2000, petitioner entered a plea of guilty. On 7/21.2000,
Judge Melvin R. Wright of the Superior Court of the District
of Columbia sentenced petitioner to 3 to 9 years (three to nine
years) and Ordered that petitioner be committed to the custody
of the Attorney General.(See Judgment and Committment Order
marked Exhibit A attached hereto).

On 12/30/2002, petitioner received an initial hearing by
the U.S. Parole Commission and was granted a presumptive parole
release date of February 20, 2004. Petitioner violated his
parole for failure to return to Community Corrections Center and
was given 12 more months incarceration.

On 1/5/2005, petitioner was reparoled and released to
Benton County Jail in Foley, Minnesota to participate in a
contract facilitie work release program. Petitioner reported
to the Benton County Jail as directed.

## STATEMENT OF THE FACTS

As a requirement of the work release program petitioner

2.

obtained employment in the community at a local meat packing
company named "Dombrovski Meat Company" located at 425 Dewey
Street Foley Minnesota, which was located three blocks away
from the Benton County Jail. Petitioner would walk to and from
work daily.

At Dombrovski Meat Company petitioner was assigned to
a Department that was white female-dominant. Petitioner is a
black male. During hiring interview and orientation employer
Tom Dombrovski warned petitioner that he had to be careful
around the female employee's that they sometimes take the male
employee's words and actions out of context.

After several days on the job at Dombrovski Meat Co. it
became apparent that other employee's were intentionally
avoiding petitioner. In an attempt to establish a friendly and
relaxed work enviroment petitioner approached his immediate
co-workers and introduced himself and offered his assistance as
an employee if it were needed. Several of petitioners co-workers
both male and female asked petitioner if it were true that he
was a prisoner convicted for drug dealing and living in the
county jail. Not wanting to lie to his co-workers petitioner
explained to them that he was participating in a work release
program at the Benton County Jail because he had been convicted
for selling some cocaine in 1999.

One morning around February 1, 2005, during a morning work
break one of petitioner's male co-workers asked petitioner in
the presence of several female co-workers if petitioner had ever

3.

meet New York mobster John Gotti while in federal prison.
Petitioner told his co-worker no he had never meet John Gotti
but he had heard jokes about Gotti in prison. The co-worker
asked petitioner to tell some of the jokes he had heard about
Gotti. Wanting to be friendly and excepted by his co-workers
petitioner told them a joke about John Gotti that went like
this,

> A tourist in New York City asked a native
> new Yorker if the city was on day light
> saving's time.
> The New Yorker said no the city is on John
> Gotti time. The tourist asked the native
> for an explination.
> The native say's well John Gotti makes a call
> at 6:00 a.m. by 12:00 noon your abducted by
> gangsters, 7:00 p.m. your beat up and tortured,
> by 10:p.m. your dead and at 12:00 midnight you
> are sleeping with the fishes. That's John Gotti
> time.

Later that day one of the female co-workers who was present
when petitioner told the joke asked petitioner what does that
seven-ten stuff mean about being beat up and killed. Petitioner
explained that it was just a joke about John Gotti the gangster.
(See Incident Report, marked Exhibit B).

About two weeks later on February 16, 2005, a female
Supervisor named "Julie" from Dombrovski Meat Co. called Mary
Herman, Program Coordinator at the Benton County Jail and stated
that petitioner Joseph Raymond Thompson was going to be fired due
to problems he was causing with fellow employees. The reason
being, inappropriate communication and threatening statements.
(See Exhibit B, Incident Report, page 2).

4.

On February 23, 2005, petitioner was given an incident report with attachments. (See Exhibit B) by Mary Herman, Staff at Benton County Jail. The Incident Report charged "Threatening another with bodily harm (Prohibited Act 203) and violating a condition of a Community Program (Prohibited Act 309).

On February 25, 2005, the Unit Disciplinary Committee at the Benton County Jail found petitioner committed the following acts "<u>violating a condition of community program and threating another with bodily harm</u>". The UDC recommended "parole rescission or retardation, loss of work release and disciplinary transfer. (See Exhibit C, Section VI).

On February 25, 2005, the Disciplinary Hearing Officer (DHO) Joetta A. Terrell, Recommended Parole Retardation of 30 days, Recommended Disciplinary transfer. (SEE Exhibit C, Section X, Action by DHO). Petitioner was not allowed to appear before the DHO  to present testimony, or explain his side of the case. Bureau of Prisons Policy Statement §541.17, provides in Section (d) An inmate has a right to be present throughout the DHO Hearing". and Section (c) The inmate is entitled to make a statement and to present documentary evidence in the inmates own behalf. An inmate has the right to submit names of requested witnesses and have them called to testify on the inmates behalf. (See Exhibit D, Sections (c) and (d)).

Based on the DHO's findings of guilt petitioner was terminated from the Community Work Release Program and transfered to the Federal Correctional Institution at Pekin, Illinois.

5.

On March 1, 2005, while petitioner was still at the Benton County Jail work release program the Parole Commission reopened and retarded petitioner's effective parole date of February 26, 2005, by way of a **nunce pro tunc order** for violating the rules of the institution and scheduling a "rescission" hearing on the next available docket. (See Exhibit E, Notice Of Action).

Petitioner's effective parole date was February 26, 2005. On March 1, 2005, when the Parole Commission reopened and retarded petitioner's parle date of February 26, 2005, petitioner had already been on parole for six days. The parole commission based the reasons for its action on Reasons: The commission has determined based upon an incident report from the Bureau of Prisons, that on February 25, 2005, you were found guilty by a Disciplinary Hearing Officer of threatening another with bodily harm. On February 25, 2005, you were found guilty by a Disciplinary Hearing Officer of violating a condition of a Community Program. The above decision is not appealable. (See Exhibit F, Reasons).

On August 11, 2005, after his transfer to the Federal Correctional Institution at Pekin, Illinois, the Parole Commission conducted a "rescission hearing"with petitioner present. The Parole Commission ordered "Rescind parole grant effective date of February 26, 2005, Deny parole. Continue for rehearing in June of 2008, after service of 36 months from your last hearing. (See Exhibit E).

The Parole Commission cited for its actions the following reasons. Reasons  You committed behavior that constitutes new

6.

criminal conduct in the Community while on work release from a
Community Corrections Center because it involved threatening
bodily harm to another. (See Exhibit E, Reasons ). The Parole
Commission also stated you are a more serious risk than indicated
by the guidelines in that you have **12 convictions in 15 years** not
including your juvenille record. (See Exhibit E, Reasons ). This
finding by the Parole Commission is incorrect petitioner has a
total of six (6) convictions including his juvenille record..

The Supervisors at Dombrouski Meats Co. never talked to
petitioner about the alledged complaint or ask ed petitioner for
an explination. Petitioner was unaware there was a problem until
Mary Herman, Program Coordinator at the Benton County Jail told
petitioner not to go back to work at Dombrouski's that he had
been fired.

## ALLEGATIONS

1.    THE PAROLE COMMISSION ABUSED ITS DISCRETION
      IN RESCENDING AND DENYING PETITIONER'S
      EFFECTIVE PAROLE DATE AFTER PAROLE HAD
      ALREADY BECOME EFFECTIVE.

2.    PAROLE COMMISSION ABUSED ITS DISCRETION IN
      RELYING ON DISCIPLINARY HEARING OFFICER'S
      FINDINGS OF GUILT BASED ON SINGLE PIECE OF
      HEARSAY EVIDENCE IN THE FORM OF AN UNSWORN
      LETTER STATEMENT THAT PETITIONER HAD ENGAGED
      IN NEW CRIMINAL CONDUCT JUSTIFYING RESCENDING
      AND DENYING EFFECTIVE PAROLE DATE.

## FACTS THAT SUPPORT ALLEGATION NUMBER ONE

The Parole Commission used a "rescission proceeding" to revoke petitioner's parole. Petitioner was entitled to a "revocation hearing" and the due process requirements of revocation proceedings. When the Parole Commission issue a Notice Of Action on March 1, 2005, to "Reopen and Retard parole effective date of February 26, 2005, nunce pro tunc" petitioner's parole date had already passed and petitioner had been on parole for six (6) days.

On August 11, 2005, at a "rescission hearing" the Parole Commission abused its discretion in "denying" a parole that had already become effective. Although the Notice Of Action states "Deny Parole" the the parole commission was actually "revoking" petitioner's parole that had already become effective. Once petitioner's effective parole date had passed a "rescission proceeding" was moot. See Taylor v. United States, 734 F.2d. 1154 N. 1 (1984).(The Parole Commission was concerned that since the presumptive date had already passed the case might now be moot). Id at 1154 Note 1.

After petitioner's effective parole date had passed the appropriate means of terminating that parole was pursuant to parole revocation proceedings and rules and the due process specifically trquired by Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed 2d 484 (1972). Under revocation proceeding's petitioner would have been entitled to a local revocation hearing where he could have called witnesses from

8.

Dombrovski Meat Co. and confront and cross-examine his accuser
and have counsel appointed to represent him at the revocation
hearing. The Parole Commission illegally used "rescission
proceedings" and rules to "revoke" petitioner's parole that
had already passed the effective date.

## FACTS THAT SUPPORT ALLEGATION NUMBER TWO

The Parole Commission's decision to "revoke" petitioner's
parole was based upon the Disciplinary Hearing Officer's (DHO)
finding that petitioner had "Threatened another with bodily harm"
and "Violated the condition of a community program". (See Exhibit
E, Reasons ). The evidence relied upon by the DHO to determine
that petitioner threatend bodily harm to another was not credible
evidence that supported the Parole Commissions' finding's of
new criminal conduct. Both the DHO and the Parole relied upon a
single peice of hearsay evidence in the form of unverified-
unsworn accusation in a letter identifying the accuser only as
Personnel of Dombrovski Meat Co. named "Julie". Petitioner was
never allowed to face or question his accuser. At the U.D.C.
hearing held at the Benton County Jail the accuser "Julie" was
not present to testify in support of her accusations against
petitioner. Petitioner was not allowed to attend or appear
before the Disciplinary Hearing Officer (DHO) in violation of
Bureau Of Prisons Policy Statement 28 CFR,§541.17 (See Exhibit
D, Sections (c) and(d) ). The sole accuser "Julie" never appeared
before the DHO to testify in support of her accusations against
petitioner.

9.

In <u>Taylor v. United States</u>, 734 F.2d 1152 (1984) The court held "Parole Commission abused its discrtetion by ruling that single piece of hearsay evidence, consisting of probation officer's summary of arrest report, established by preponderance of evidence that parolee had engaged in new criminal conduct justifying revocation of parole". Id at 1155-56. In <u>Marshall v. Garrison</u>, 659 F.2d 440, 446 the court held ("Short of some relevant reasonably reliable evidence of the commission of another crime, the district court may not permit the parole commission to deny or postphone the granting of parole on the basis of a prisoner's commission of other crimes").

The single piece of hearsay evidence relied upon by the DHO and the Parole Commission - the accusing letter from "Julie" at Dombrovski Meat Co -is unsworn and does not name anybody that petitioner alledgely threatened with bodily harm.  There is no victim identified in the accusations. Additionally nobody called the police or reported to police that petitioner threatened anyone with bodily harm. No arrest was made by police.  The letter accusations are not crediable evidence . Under the circumstances presented in this case petitioner should have been allowed to face and cross-examine his accuser "Julie" from Drombrovski Meat Co.  In <u>Morrissey v. Brewer</u>, 408 U.S. at 487, the Court held "In some cases a person who has given adverse information on which parole revocation is to be based is to be made available for questioning in [the parolee's] presence". Id. at 487.  The court in <u>Lawrence v. Smith</u>, 451 F.Supp. 179, 187 (W.D.N.Y. 1978) deemed the the testimony of a witness

10.

important enough that reliance on a written statement alone violated a parolee's right to confrontation. In petitioners case the only accuser of criminal conduct is "Julie" Personel from Dombrovski Meat Co. The Parole Commission had no reliable information that petitioner had committed any new criminal conduct.

The rescission and revocation of petitioner's parole retards his parole eligibility to June 2008, and increases his incarceration by 36 months. Because of the severity of consequences it is essential that the decision to rescind and deny parole be based on accurate information and reliable findings.

## VIOLATING A CONDITION OF A COMMUNITY PROGRAM

The DHO found that petitioner violated a condition of a Community program by being at "Casey's General Store" at 11:35 a.m. . This was based on Mary Hermans (Program Coordinator) statement made in the Incident Report that "Mr Thompson did not have permission to go to Casey's and this is a violation of the work release program". The Incident Report goes on to say, "The supervisor at Dombrovski Meats also confirmed this because she said employees admitted they went to Casey's with him". What the Incident Report fails to explain is that petitioner and his co-workers went to Casey's Store everyday at 11:30 a.m. to purchase food items for thier lunch hour. The Benton County Jail work release program does not provide prisoners with

11.

food to take to work for noon meals. If petitioner wanted to eat a lunch meal he had to purchase his food items from Casey's General Store which was located a short distance from Dombrovski Meat Co. Mary Herman, Program Coordinator knew that petitioner had to leave Dombrovski Meat Co. building everyday in order to obtain food for his lunch which was from 11:30 to 12:30. Petitioner did not violate the rules of the community program as charged by Mary Herman. This is a drummed up charge to support the drummed up charge of threatening another with bodily harm.

### INCORRECT INFORMATION

The Parole Commission states in its Notice Of Action of August 11, 2005, <u>Reasons</u> ...... After consideration of all relevant factors and information presented, a decision above the guidelines is warrented because you are a more seroius risk than indicated by the guidelines in that you have 12 convictions in 15 years, not including your juvenille record".... (See Exhibit E, <u>Reasons</u> ). The Parole Commissions findings that petitioner has 12 convictions in 15 years not including your juvenille record is incorrect. Petitioner has six(6) convictions including his juvenille record.

Petitioner's case presents a travesty of justice because all the findings of the Parole Commission are based on unreliable hearsay evidence and erroneous facts.

## CONCLUSION

Petitioner prays this Honorable Court will issue an Order directing the U.S. Parole Commission to show cause why petitioner's parole should not be reinstated and petitioner released forthwith. And what further relief the court deems necessary.

Respectfully submitted

Joseph Thompson
Petitioner, pro se.   9/8/05

Joseph Thompson
#11874-007
Federal Correctional Institution
P.O.Box 5000
Pekin, Illinois. 61555

AMENDED

## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA

United States of America
~~District of Columbia~~====

vs.

JOSEPH R. THOMPSON

Case No. F-3393-99

PDID No. 383 809

DCDC: 236180

### JUDGMENT AND COMMITMENT/PROBATION ORDER
#### AFTER PROBATION REVOCATION/SHOW CAUSE HRG-(*)

The above-named defendant having entered a plea of ☐ Not Guilty ☒ Guilty to the Charge(s) of _____
COUNT C ATTEMPTED POSSESSION WITH THE
INTENT TO DISTRIBUTE COCAINE.

And the Court having conducted a hearing in the above entitled matter takes th
and having been found guilty by ☐ Jury ☐ Court, it is hereby ORDERED that the defendant has been
convicted of and is guilty of the offense(s) charged, and is hereby SENTENCED to ~~following acti~~
PROBATION REVOKED BY THE COURT SENTENCE IMPOSED
OF 3-9 YEARS JAIL WITH RECOMMENDATION
FOR FEDERAL DESIGNATION AS TO SERVICE OF SENT.
CTF OR DRUG TREATMENT RECOMMENDED
VVCCA ASSESSMENT -$100.00 to BE PAID OUT OF Institution

☐ MANDATORY MINIMUM term of _____ applies to the sentence imposed.

☐ MANDATORY MINIMUM term does not apply.

☒ ORDERED that the defendant be committed to the custody of the Attorney General for imprisonment for the period imposed above.

☐ ORDERED that the defendant be committed to the custody of the Attorney General for treatment and supervision provided by the D.C. Department of Corrections pursuant to Title 24, Section 803[b] of the D.C. Code [Youth Rehabilitation Act 1985].

☐ ORDERED that the defendant be placed on probation in charge of the Director, Social Services Division, and it is further ORDERED that while on probation the defendant observe the following marked conditions of probation:

   ☐ Observe the general conditions of probation listed on the back of this order.

   ☐ Cooperate in seeking and accepting medical, psychological or psychiatric treatment in accordance with written notice from your Probation Officer.

   ☐ Treatment for ☐ alcohol problems ☐ drug dependency or abuse as follows:
   _____

☐ Restitution of $_____ in monthly installments of $_____ beginning _____ (see reverse side for payment instructions). The Court will distribute monies to _____.

☐ _____

Costs in the aggregate amount of $ 100.00 have been assessed under the Victims of Violent Crime Compensation Act of 1981, and ☐ have ☐ have not been paid.

ORDERED that the Clerk deliver a true copy of this order to appropriate authorized official(s) and that the copy shall serve as the commitment/order for the defendant.

7/21/00
Date

A TRUE COPY
TEST: 7/21/00
Certification by Clerk pursuant to Criminal Rule/32(a).
Clerk, Superior Court of the
District of Columbia

7/21/00                    By _____
Deputy Clerk

Judge

Exhibit
A

# DOMBROVSKI MEATS CO.
## 425 DEWEY STREET
## FOLEY MN 56329
### 320-968-6275

02-17-05

**Incident Report**

Benton County Jail

Attn: Mary

On Feb. 16, 2005 management was told thru several employees that Joseph Thompson was making threatening remarks to fellow female co-workers. Mr. Thompson had told a couple of his female co-workers that he could have them and he could take care of their boyfriend or husband. The females questioned him as to what he meant and he proceeded to state that "he does none of the work himself he just has connections, it will only take a phone call".

One female employee said she was not comfortable with working by Mr. Thompson and tried not to talk or work real close to him. Mr. Thompson after a few days realized she was not talking to him made his way close enough to her and said "that is fine that you do not want to talk with me you are at a seven". She said "seven what does that mean?" He said "you have till ten". She said "seven, ten what do you mean?" He would not tell her so she talked with other female coworkers and asked them what do you think that means? Another female co-worker confronted Mr. Thompson and said "what does the seven – ten stuff mean?" He told her "that at seven you get hurt real bad and at ten you get killed".

The department Mr. Thompson was employed in is female dominant. All of the employees in that department converse together. Now being told what a seven and a ten meant a few of the female employees became upset and uncomfortable with him in the work place.

Dombrovski Meats released Mr. Thompson from employment upon discovering that this working relationship was not a good fit.

Cordially,

*Mas Dincol*

Personnel
Dombrovski Meats Co.

Exhibit

B

## Incident Report

On Wednesday, February 16, 2005, I received a phone call at approximately 1100 hrs, from Julie, a supervisor at Dombrovski Meats, stating that Joseph Raymond Thompson, was going to be fired due to problems he was causing with   fellow employees. The reason being, inappropriate communication and threatening statements.  I was advised that at 1115 hours that Mr. Thompson had exited the building and was walking down the sidewalk toward the jail, three blocks away.  Mr. Thompson should have been back within 10 minutes.  However, at 1135 hours, Mr. Thompson calls the jail and inquires about his paycheck.  I asked him where he was and he stated "The Store", which I took as Casey's General Store.  I told him he was to immediately report back to jail and I gave him 5 minutes.  He returned to the jail at 1145.  Mr. Thompson did not have permission to go to Casey's and this is a violation of the work release program.  The Supervisor at Dombrovski Meats also confirmed this because she said employees admitted they went to Casey's with him.

**Violation:  Unaccountability**

**Forwarded to Disciplinary Hearing Board 2-16-05**

Mary Herman
Program Coordinator
Benton County Jail

BP-S205.073  **INCIDENT REPORT (CCC'S)** CDFRM AUG 99

U.S. DEPARTMENT OF JUSTICE                    **FEDERAL BUREAU OF PRISONS**

| 1. Name of CCC: Benton County Jail (7TP) | | | |
|---|---|---|---|
| Part I - Incident Report | | | |

| 2. Name of Offender THOMPSON, Joseph R. | 3. Register Number 11847-007 | 4. Date of Incident: February 16, 2005 | 5. Time 11:00 a.m. |
|---|---|---|---|
| 6. Place of Incident Workplace (Dombrovski Meats Co.) | 7. Component Pre-Release | 8. Type of Offender Institution Transfer | |

9. Incident: Threatening Another with Bodily Harm (Prohibited Act Code 203) and Violating a Condition of a Community Program (Prohibited Act Code 309).

11.  Description of Incident (Date:2/16/05 Time: 11:00 a.m. Staff become aware of incident)

On Wednesday, February 16, 2005, I received a phone call at approximately 1100 hrs, from Julie, a supervisor at Dombrovski Meats, stating that Joseph Raymond Thompson (#11847-007), was going to be fired due to problems he was causing with fellow employees.. The reason being, inappropriate communication and threatening statements

Upon further investigation, Julie provided further written detail which included the following information:

"On Feb. 16,2005 management was told thru several employees that Joseph Thompson was making threatening remarks to fellow female co-workers. Mr. Thompson had told a couple of his female co-workers that he could have them and he could take care of their boyfriend or husband. The females questioned him as to what he meant and he proceeded to state that "he does none of the work himself he just has connections, it will only take a phone call".

One female employee said she was not comfortable with working by Mr. Thompson and tried not to talk or work real close to him. Mr. Thompson after a few days realized she was not talking to him made his way close enough to her and said "that is fine that you do not want to talk with me you are at a seven". She said "seven what does that mean?" He said "you have till ten". She said "seven, ten what do you mean?" He would not tell her so she talked with other female coworkers and asked them what do you think that means? Another female co-worker confronted Mr. Thompson and said "what does the seven-ten stuff mean?" He told her "that at seven you get hurt real bad and at ten you get killed".

The department Mr. Thompson was employed in is female-dominant. All of the employees in that department converse together. Now being told what a seven and a ten meant a few of the female employees became upset and uncomfortable with him in the work place. Dombrovski Meats released Mr. Thompson from employment upon discovering that this working relationship was not a good fit."

In my opinion the above described behavior consitutes Threatening Another with Bodily Harm".

Furthermore, I was advised that at 11:15 a.m., Mr. Thompson had exited the employer's building and was walking down the sidewalk toward the jail, three blocks away. Mr. Thompson should have been back within 10 minutes. However, at 11:35 a.m., Mr. Thompson called the jail and inquired about his paycheck. I asked him where he was and he stated "the store", which I took as Casey's General Store. I told him he was to immediately report back to jail and I gave him 5 minutes. He returned to the jail at 11:45 a.m.. Mr. Thompson did not have permission to go to Casey's and this is a violation of the work release program. The supervisor at Dombrovski Meats also confirmed this because she said employees admitted they went to Casey's with him.

| 12. Signature of Reporting Employee ~Mary Herman~ | Date & Time 2-23-05 | 13.  Name & Title (Printed) Mary Herman, Program Coordinator |
|---|---|---|
| 14 Incident Report Delivered to Above Offender By ~Sgt. Gleas~ | | 15. Date Incident Report Delivered 2-23-05 | 16.  Time Incident Report Delivered 1433 |

Record Copy - Central File Record; Copy - DHO; Copy - Inmate After UDC Action; Copy - Inmate Within 24 Hours of Part I Preparation

(This Form May Be Replicated Via WP)                    Replaces BP-205.073 Of MAR 94

Exhibit

C

BP-B208 (Continued)

## IV. FINDINGS OF THE COMMITTEE

☐ a. The act was committed as charged.

☒ b. The following act was committed: <u>Voilating a condition of a community Program and Threatening another with bodily harm.</u>

☐ c. No prohibited act was committed: Expunge according to your Statement of Work.

## V. SPECIFIC EVIDENCE RELIED ON TO SUPPORT FINDINGS

I support my findings based on the incident report which indicates information from Julie Schmnich and Mary Herman and also the information gathered from the investigation and hearing. It is clear by the letter from Dombrovski Meats that there was obviously some discussion about a seven-ten numbering system and it's meaning and how uncomfortable it made particular co-workers. In the investigation an employee as well admitted she was aware of the numbering system but didn't know of its particulars. (Threatening bodily harm) It is clear for the second violation of Violating a condition of a community program, unaccountability, it due to Mary Herman's incident report, Mr. Thompson called the jail and admitted he was at "The Store" when he knew that no loitering to and from work was approved. In the investigation, Mr. Thompson stated that Mr. Tom Dombrovski, employer, stated that to be careful of female employee's they like to cause problems for the male employees. In the investigation, Mr. Dombrovski stated that he advises all employees to remember that you are working in a male and female environment. Mr. Dombrovski denies any comment referring to how females get male employees in trouble. Mr. Dombrovski said his message during orientation was taken out of context.

## VI. SANCTION RECOMMENDATION

Recommend parole date rescission or retardation, loss of work release and disciplinary transfer.

## VII. REASON FOR SANCTION RECOMMENDATION

I feel the seven-ten point system created quite an uncomfortable situation for employees of Dombrovski Meats. Also the comments by Mr. Thompson per the incident report that "he does none of the work himself he just has connections, it will only take a phone call to take of their boyfriends or husbands" is truly threatening and serious. I believe Mr. Dombrovski is credible as an employer of over 40 employees.

## VIII. APPEAL RIGHTS

The inmate has been advised of the findings, specific evidence relied on, action and reasons for the action. The inmate has been advised of his right to appeal under the Administrative Remedy Procedure or by letter within 20 days of the imposition of the sanction to the Regional Director. A copy of this report has been given to the inmate.

## IX. DISCIPLINE COMMITTEE

| Chairperson Doug Burk | Member | Member |
| --- | --- | --- |

## X. ACTION BY DHO

203 - Recommend Parole Retardation of 30 days    2/25/
Recommend Disciplinary Transfer
309 - Recommend Disciplinary Transfer    Joetta A. Terrell

Typed Name/Signature - DHO

END FORM

(This form may be replicated via WP)

on the merits of the charge(s) or in extenuation or mitigation of the charge(s). The DHO shall arrange for the presence of the staff representative selected by the inmate. If the staff member selected declines or is unavailable because of absence from the institution, the inmate has the option of selecting another representative, or in the case of an absent staff member of waiting a reasonable period for the staff member's return, or of proceeding without a staff representative. When several staff members decline this role, the Warden shall promptly appoint a staff representative to assist the inmate. The DHO shall afford a staff representative adequate time to speak with the inmate and interview requested witnesses where appropriate. While it is expected that a staff member will have had ample time to prepare prior to the hearing, delays in the hearing to allow for adequate preparation may be ordered by the Discipline Hearing Officer. When it appears that the inmate is not able to properly make a presentation on his own behalf (for example, an illiterate inmate), the Warden shall appoint a staff representative for the inmate, even if one is not requested.

(c) The inmate is entitled to make a statement and to present documentary evidence in the inmate's own behalf. An inmate has the right to submit names of requested witnesses and have them called to testify and to present documents in the inmate's behalf, provided the calling of witnesses or the disclosure of documentary evidence does not jeopardize or threaten institutional or an individual's security. The DHO shall call those witnesses who have information directly relevant to the charge(s) and who are reasonably available. This may include witnesses from outside of the institution. The inmate charged may be excluded during the appearance of an outside witness. The appearance of the outside witness should be in an area of the institution in which outside visitors are usually allowed. The DHO need not call repetitive witnesses. The reporting officer and other adverse witnesses need not be called if their knowledge of the incident is adequately summarized in the Incident Report and other investiga-

tive materials supplied to the DHO. The DHO shall request submission of written statements from unavailable witnesses who have information directly relevant to the charge(s). The DHO shall document reasons for declining to call requested witnesses in the DHO report, or, if the reasons are confidential, in a separate report, not available to the inmate. The inmate's staff representative, or when the inmate waives staff representation, the DHO, shall question witnesses requested by the DHO. The inmate who has waived staff representation may submit questions for requested witnesses in writing to the DHO. The inmate may not question any witness at the hearing.

(d) An inmate has the right to be present throughout the DHO hearing except during a period of deliberation or when institutional security would be jeopardized. The DHO must document in the record the reason(s) for excluding an inmate from the hearing. An inmate may waive the right to be present at the hearing, provided that the waiver is documented by staff and reviewed by the DHO. A waiver may be in writing, signed by the inmate, or if the inmate refuses to sign a waiver, it shall be shown by a memorandum signed by staff and witnessed by a second staff member indicating the inmate's refusal to appear at the hearing. The DHO may conduct a hearing in the absence of an inmate when the inmate waives the right to appear. When an inmate escapes or is otherwise absent from custody, the Discipline Hearing Officer shall conduct a hearing in the inmate's absence at the institution in which the inmate was last confined. When an inmate returns to custody following absence during which sanctions were imposed by the DHO (or the predecessor Institution Discipline Committee (IDC)), the Warden shall have the charges reheard before the Discipline Hearing Officer ordinarily within 60 days after the inmate's arrival at the institution to which the inmate is designated after return to custody, and following appearance before the Unit

Discipline Committee at that institution. The UDC shall ensure that the inmate has all rights required for appearance before the Discipline Hearing Officer, including delivery of charge(s), advisement of the right to remain silent and other rights to be exercised before the Discipline Hearing Officer. All the applicable procedural requirements for hearings before the Discipline Hearing Officer apply to this rehearing, except that written statements of witnesses not readily available may be liberally used instead of in-person witnesses. The DHO upon rehearing may affirm the earlier action taken, may dismiss the charge(s), may modify the finding of the original DHO as to the offense which was committed, or may modify but may not increase the sanctions previously imposed in the inmate's absence.

(e) The DHO may refer the case back to the UDC for further information or disposition. The DHO may postpone or, at any time prior to making a decision as to whether or not a prohibited act was committed, may continue the hearing until a later date whenever further investigation or more evidence is needed. A postponement or continuance must be for good cause (determined by the DHO) shown by the inmate or staff and should be documented in the record of the hearing.

(f) The DHO shall consider all evidence presented at the hearing. The decision of the DHO shall be based on at least some facts, and if there is conflicting evidence, it must be based on the greater weight of the evidence. The DHO shall find that the inmate either:

(1) Committed the prohibited act charged and/or a similar prohibited act if reflected in the Incident Report; or

(2) Did not commit the prohibited act charged or a similar prohibited act if reflected in the Incident Report.

When a disciplinary decision is based on confidential informant information, the UDC or DHO shall document, ordinarily in the hearing report, the finding as to the reliability of each confidential informant relied on *and the factual basis for that finding.* When it appears that this documentation in the report would reveal the confidential informant's identity, the finding as to the reliability of each confidential in-

Exhibit
D

U.S. Department of Justice                                **Notice of Action**
United States Parole Commission
5550 Friendship Boulevard
Chevy Chase, Maryland 20815-7201

| | |
|---|---|
| Name: THOMPSON, Joseph | Institution: Pekin FCI |
| Register Number: 11874-007 | |
| DCDC No: 236-180 | Date: August 11, 2005 |

As a result of the hearing conducted on June 29, 2005, the following action was ordered:

Rescind parole grant effective date of February 26, 2005. Deny parole. Continue for a rehearing in June 2008, after the service of 36 months from your last hearing.

### REASONS:

You committed behavior that constitutes new criminal conduct in the community while on work release from a community corrections center, which is rated as Category One severity because it involved threatening bodily harm. Your recalculated salient factor score (SFS-98) after considering your new criminal conduct is 1. Guidelines established by the Commission which consider the above factors indicate a range of 12-16 months to be added to your guideline range.

Your rescission guideline range is 12-16 months to be added to your original parole effective date of 02-26-2005. After consideration of all relevant factors and information presented, a decision above the guidelines is warranted because you are a more serious risk than indicated by the guidelines in that you have 12 convictions in 15 years, not including your juvenile record. You have previously failed in probation and failed on parole. Now while in a halfway house, you threatened female co-workers.

THE ABOVE DECISION IS NOT APPEALABLE.

Copies of this Notice are sent to your institution and to your supervising officer. In certain cases, copies may also be sent to the sentencing court. You are responsible for advising any others you wish to notify.

cc:     CSS Data Management Group
        D.C. Court Services & Offender Supervision Agency
        300 Indiana Avenue, N.W., Suite 2070
        Washington, D.C. 20001

8/12/05

Exhibit

E

U.S. Department of Justice

United States Parole Commission
5550 Friendship Boulevard
Chevy Chase, Maryland 20815-7201

1    **Notice of Action**

| | |
|---|---|
| Name: THOMPSON, Joseph | Institution: Minneapolis CCM |
| Register Number: 11874-007 | |
| DCDC No: 236-180 | Date:    March 1, 2005 |

In the case of the above-named, the Commission orders pursuant to 28 C.F.R. §2.86:

Reopen and retard parole effective date of February 26, 2005 *nunc pro tunc* for violating the rules of the institution and schedule a rescission hearing on the next available docket.

### REASONS:

The Commission has determined, based upon an incident report from the Bureau of Prisons, that on February 25, 2005 you were found guilty by a Disciplinary Hearing Officer of Threatening Another with Bodily Harm on February 25, 2005 you were found guilty by a Disciplinary Hearing Officer of Violating a Condition of a Community Program.

THE ABOVE DECISION IS NOT APPEALABLE.

cc:    CSS Data Management Group
D.C. Court Services & Offender Supervision Agency
300 Indiana Avenue, N.W., Suite 2070
Washington, D.C. 20001

3/18/05

Exhibit

F

THOMPSON 11874-007                                      -1-                          Clerk:   MDD