IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
AT PEORIA

JOSEPH THOMPSON,　　　　　　　　）
　　　　　　　　　　　　　　　　）
　　　　Petitioner,　　　　　　　）
　　　　　　　　　　　　　　　　）
vs.　　　　　　　　　　　　　　　）　　No. 05-1267
　　　　　　　　　　　　　　　　）
UNITED STATES PAROLE　　　　　　）
COMMISSION,　　　　　　　　　　　）
　　　　　　　　　　　　　　　　）
　　　　Respondent.　　　　　　　）

**RESPONSE TO PETITION FOR WRIT OF HABEAS CORPUS
BROUGHT PURSUANT TO 28 U.S.C. § 2241**

　　　　Now comes the respondent, the United States Parole Commission, by and through its attorneys, Rodger A. Heaton, United States Attorney for the Central District of Illinois, and Thomas A. Keith, Assistant United States Attorney, and in response to the petition for writ of habeas corpus brought pursuant to 28 U.S.C. § 2241, states as follows:

**STATEMENT OF FACTS**

　　　　The petitioner was convicted in the District of Columbia for attempted possession with intent to distribute cocaine. (App.2) On September 28, 1999, he was sentenced to nine years imprisonment. (App.2,3)

　　　　On December 30, 2002, the petitioner received his initial parole hearing. (App.7-10) The Commission's decision following that hearing was deferred to obtain additional information concerning the petitioner's conviction and criminal record. (App.11) On September 10, 2003, the Commission issued its decision to grant the petitioner parole effective February 20, 2004, after service of 49 months. (App.12)

　　　　On February 4, 2004, however, the Commission reopened the petitioner's

case and scheduled a rescission hearing to consider new information that the petitioner had escaped from a community corrections center (CCC) prior to his parole date. (App.16)

On June 23, 2004, the Commission conducted the petitioner's rescission hearing. (App.17-18)  The petitioner admitted that he had escaped. (App.17)  The Commission found that the petitioner had escaped from the CCC, and established a guideline range of 8 to 16 months to be added to his previous parole date. (App.18)

On July 19, 2004, the Commission issued its decision rescinding the petitioner's parole date by 12 months, and granting the petitioner parole on February 26, 2005.[1]  (App.19)  On January 5, 2005, the petitioner was transferred to a CCC. (App.36)

On February 16, 2005, Mary Herman, Program Coordinator at the Benton County Jail in Foley, Minnesota, received a telephone call from the petitioner's employer. (App.20)  The employer stated that the petitioner was going to be fired for causing problems with fellow employees, specifically with inappropriate communication and threatening statements. (App.20)  The petitioner allegedly told some of his "female co-workers that he could have them and he could take care of their boyfriend or husband." (App.20)  When questioned by the co-workers as to what he meant, the petitioner replied that "he does none of the work himself he just has connections, it will only take a phone call." (App.20)  Additionally, the petitioner allegedly made references to "seven-ten," explaining

---

[1]The petitioner was to be released to a consecutive six-month prison sentence imposed by the U.S. District Court for the District of Maryland for unlawful possession of property of another.

2

"that at seven you get hurt real bad and at ten you get killed." (App.20)  The petitioner also violated his work release program by going to a Casey's store without permission. (App.20)

On February 23, 2005, the petitioner was charged by Incident Report with Violating a Condition of a Community Program (Unaccountability), in violation of BOP Code 309, and Threatening Another with Bodily Harm, in violation of BOP Code 203. (App.20)  The petitioner was given notice of his rights, including the right to call witnesses and present documentary evidence at the hearing, and he opted to proceed with the hearing, waiving his right to 24-hour notice before the hearing. (App.20-22)

On February 24, 2005, the Center Discipline Committee (CDC) held a hearing. (App.23-24)  The petitioner was again advised of his rights, and a staff representative appeared on his behalf. (App.23)  He did not request any witnesses. (App.23)  The petitioner denied the charge, stating "he at no time made any statement like the females allege he did.  He feels that the females at this workplace got together and made up the whole story." (App.23)

Following the hearing, the CDC found the petitioner had committed the prohibited acts. (App.24)  The Committee specifically relied on the incident report and information gathered from the investigation and hearing. (App.24)  The CDC recommended sanctions of a parole date rescission or retardation, loss of work release, and a disciplinary transfer. (App.24)  On February 25, 2005, the Disciplinary Hearing Officer ("DHO") recommended that the petitioner be transferred and that his parole date be retarded by 30 days. (App.24)

On February 25, 2005, the day before the petitioner was to have been

3

paroled, the Commission was advised telephonically that there was new information in the petitioner's case, i.e., that the DHO found that the petitioner had made threats. (App.25)  On March 1, 2005, the Commission reopened the petitioner's case and scheduled a rescission hearing to consider new information it had received that the petitioner had threatened someone in the community with bodily harm and violated a condition of the community corrections program. (App.26)

On June 29, 2005, a hearing examiner from the Commission conducted the rescission hearing. (App.27-30)  The petitioner denied committing the misconduct, stating that the women he worked with had misinterpreted his statements. (App.28)  The hearing examiner found that the employee's claim that the petitioner had made threatening statements to her was more credible than the petitioner's denial, and found the petitioner had committed the charge of threatening another with bodily harm. (App.28-29)

The hearing examiner established the rescission guidelines as 12 to 16 months which was to be added to the previous parole date. (App.29)[2]  The hearing examiner recommended that the parole date be rescinded by 16 months and that the petitioner be granted a parole date of June 26, 2006. (App.29)

---

[2]The appropriate sanction for disciplinary infractions is determined by referring to the rescission guidelines at 28 C.F.R. § 2.36. 28 C.F.R. § 2.86(c).  The rescission guidelines classify institutional misconduct in terms of "administrative rule infractions," "escape/new criminal behavior in a prison facility," and "new criminal behavior in the community," which includes behavior committed while on work release. 28 C.F.R. § 2.36(a).  "New criminal behavior in the community" is defined as "offenses committed in a prison or in a community corrections center that are not limited to the confines of the prison or community corrections center."  28 C.F.R. §2.36(a)(3), note.  If the prisoner commits new criminal behavior in the community, the guidelines which apply to parole violators under § 2.21 are established by categorizing the severity of the offense committed and by recalculating the salient factor score as if the prisoner had been on parole.

4

A hearing examiner reviewing the case agreed with the hearing examiner's recommendation, and the case was then submitted to the Commission for a decision. (App.31) Under 28 C.F.R. § 2.74(c), a final decision requires two Commissioners to agree with the hearing examiner panel's recommendation. In this case, only one Commissioner agreed with the recommendation of the hearing examiner panel, and two Commissioners disagreed and decided to deny Thompson parole and continue to a rehearing in June 2008. (App.31) Since this decision differed from the hearing examiner panel's recommendation by more than six months, three Commissioners were required to concur in the disposition for an effective Commission decision. *See* 28 C.F.R. § 2.74(c). On August 11, 2005, the Commission issued the decision that had been voted on by two Commissioners to rescind the petitioner's parole date, deny parole, and continue to a rehearing in June 2008. (App.32)

Upon review of this case in preparation for the government's response, the Commission's legal office discovered that an additional Commissioner's vote, either in agreement with the hearing examiner panel or with the two Commissioner panel, had not been obtained before the Commission issued its decision. The legal office also discovered that the reasons provided on the notice of action dated August 11, 2005, for exceeding the guidelines were in error because they did not accurately reflect the reasons specified on the addendum to the hearing summary. (App.34) On November 30, 2005, a final vote was obtained, which was in agreement with the decision to deny parole and schedule a rehearing in June 2008. (App.31)

On December 1, 2005, the Commission issued a corrected notice of action

solely to correct the reasons that had been provided in the previous notice of action for exceeding the rescission guidelines of 12 to 16 months. (App.35) The corrected notice of action states that the Commission decided to exceed the rescission guidelines because:

> [Y]ou are a more serious risk and a poorer risk than indicated by your Salient Factor Score in that you have 12 convictions in 15 years, not including your juvenile record. You have previously failed on probation and failed on parole. Now while in a halfway house, you threatened female coworkers.

(App.35)

On September 12, 2005, the petitioner filed the instant petition for writ of habeas corpus by a person in federal custody pursuant to 28 U.S.C. § 2241, challenging the Parole Commission's decision to rescind his parole date.

The petitioner claims: (1) that the Commission was required to conduct a revocation hearing to return him to prison rather than a rescission hearing to rescind his parole date because he had already been released on parole; (2) that the Commission abused its discretion by relying on the finding of the Bureau of Prisons ("BOP") Disciplinary Hearing Officer as a basis for its finding that he had committed new criminal conduct while on work release because the Commission had no reliable information on which to base its decision to rescind his parole date; (3) that he was denied due process because the person who accused him of threatening her with bodily harm did not testify at his hearing, and the BOP and the Commission relied on a "single piece of hearsay evidence" to make findings as to his misconduct; (4) that the BOP "drummed up" a charge that he violated a condition of a community program because he had not directly returned to the community corrections center after he had been fired from his job; and (5) that

6

the reasons the Commission used as a basis for departing from the guidelines were erroneous because the Commission stated that he had been convicted of 12 offenses in the past 15 years. (Pet.7-13)

## JURISDICTION

The Court has jurisdiction under 28 U.S.C. § 2241 because the petitioner is confined in this judicial district at the Federal Correctional Institution, Pekin, Illinois. *See Rumsfeld v. Padilla*, 542 U.S. 426 (2004). However, the Parole Commission is not a proper respondent in this case. In a habeas corpus petition, brought pursuant to 28 U.S.C. § 2241, the proper respondent is the prisoner's immediate custodian, *i.e.*, the warden of the institution in which the prisoner is confined. 28 U.S.C. § 2243; *Bridges v. Chambers*, 425 F.3d 1048, 1050 (7th Cir. 2005). The Court should therefore strike the U.S. Parole Commission as respondent, and substitute the Warden of the Federal Correctional Institution, Rick Veach, as the sole respondent, in order to comply with the requirements of 28 U.S.C. § 2243 ("The writ or order to show cause shall be directed to the person having custody of the person detained").

## DISCUSSION

I. **The Parole Commission did not abuse its discretion when it conducted petitioner's rescission hearing.**

**A. Petitioner was not on parole when he committed the misconduct.**

The petitioner claims that he was released on parole before the Commission decided to reopen his case and schedule a parole rescission hearing, and that the Parole Commission was required to conduct a revocation hearing to return him to prison.

The petitioner had not, as he claims, been released on parole on January 5,

7

2005, nor was he released on parole on February 26, 2005, as he also claims. A prisoner does not become a parolee until he has received and signed the parole certificate. "A grant of parole becomes operative upon the authorized delivery of a certificate of parole to the prisoner, and the signing of that certificate by the prisoner, who thereafter becomes a parolee." 28 C.F.R. § 2.86(e). A prisoner, like the petitioner, who has been granted a date for parole and who has been transferred to a halfway house until that date is not a parolee. *See Christopher v. United States Bd. of Parole*, 589 F.2d 924, 932 (7th Cir. 1978)(holding that prisoner in halfway house was not actually released on parole).

**B. The parole date is conditioned upon good conduct by the prisoner.**

The parole date established by the Commission is conditioned upon the prisoner "maintaining a good conduct record in the institution or prerelease program to which the prisoner has been assigned." 28 C.F.R. § 2.86(a). At any time before the prisoner's actual release, the Commission may reconsider the parole grant based upon the receipt of any new and significant information concerning the prisoner, including disciplinary infractions, and may rescind the previously granted parole date. 28 C.F.R. § 2.86(b). A prisoner who has committed serious disciplinary infractions is not to be released until the Commission advises the institution that there has been no change in the Commission's order granting parole. 28 C.F.R. § 2.86(d).

Here, the BOP advised the Commission one day before the petitioner's parole effective date that the petitioner had committed serious disciplinary infractions while residing at the CCC. The BOP properly held the petitioner in custody while the Commission awaited the submission of new information on

8

the petitioner's misconduct. When the Commission received the incident report describing the infractions, the findings of the Disciplinary Committee, and the recommendation of the DHO on March 1, 2005, it decided to reopen the petitioner's case and conduct a hearing to consider the infractions.

II. **The Parole Commission did not abuse its discretion when it relied on the BOP's findings and rescinded petitioner's parole date.**

The petitioner claims that the Commission abused its discretion by relying on the BOP's findings to rescind his parole date. He asserts that the Commission had no reliable information on which to base its decision because the BOP's findings were based on a single piece of hearsay.[3]

**A. Petitioner is not entitled to confront his accuser at a disciplinary hearing as a right.**

The petitioner claims that he was entitled to a full adversarial hearing to determine whether he committed the misconduct of threatening another with bodily harm. He asserts that he has a due process right to confront and cross-examine his accuser as provided by *Morrissey v. Brewer*, 408 U.S. 471, 489 (1972). *Morrissey* suggests that due process is flexible and that individual proceedings may require differing procedural protections. *Id.* at 481. A prisoner residing at a halfway house is not yet a parolee; therefore the liberty interest of which he may be deprived does not require the same due process protections as a full "*Morrissey*-type" hearing for parole revocation. *See Christopher*, 589 F.2d at 932 ("rescission of petitioner's parole grant does not embrace a liberty interest within

---

[3] The petitioner also claims that the Commission's action has changed his parole eligibility date. According to the BOP's sentence computation, the petitioner became eligible for parole on the nine-year sentence on January 25, 2003. (App.3) The petitioner has not shown that this date has changed since the Commission's decision.

the meaning of the due process clause"). The petitioner's reliance on *Morrissey*, *Taylor v. United States Parole Comm'n*, 734 F.2d 1154 (6th Cir. 1984), and *Lawrence v. Smith*, 451 F. Supp. 179 (W.D.N.Y. 1978), is misplaced as those cases involved parole revocation.

In *Christopher*, which did involve rescission of a parole date, the prisoner, like the petitioner, had been transferred to a halfway house prior to his parole date. 589 F.2d at 930. The Seventh Circuit held that a prisoner residing in a halfway house did not have a "vested liberty interest but only an anticipatory interest," and full due process procedures would not apply in the rescission of a parole effective date. *Id*. The Seventh Circuit also held that the prisoner in that case was entitled to some minimal due process since his custodial status was subject to a "curtailing change in liberty" following his return to prison. *Id*. at 928.

The question of what process is due a prisoner in a prison disciplinary proceeding was answered by the Supreme Court in *Wolff v. McDonnell*, 418 U.S. 539 (1974). The Supreme Court held that prison disciplinary proceedings are not the continuation of the criminal prosecution and, therefore, the full panoply of rights that is due a defendant in a criminal trial does not apply. *Id*. at 556 (finding that "there must be mutual accommodation between institutional needs and objectives and the provisions of the Constitution that are of general application"). The Supreme Court found that advance written notice of the violation, a brief period of time to prepare, an opportunity for the prisoner to call witnesses and present documentary evidence in his defense, at the prison administrator's discretion, and a written statement of the evidence relied on and reasons for the action taken provided the prisoner with minimal due process rights. *Id*. at 565-66.

The petitioner complains that he did not have the opportunity to confront the person who accused him of making threats; however, the opportunity to call and cross-examine adverse witnesses is not required in a rescission proceeding to satisfy due process. *Wolff*, 418 U.S. at 567-68 (confrontation and cross-examination of adverse witnesses is not required in the context of prison disciplinary hearings); *Christopher*, 589 F.2d at 932 (holding that prisoner was not denied due process by not being entitled to cross-examine witnesses); *Wheeler v. Sims*, 951 F.2d 796, 800 (7th Cir. 1992)(prison officials do not need to engage in a formal adversarial proceeding in order to review the charges and evidence against the prisoner and satisfy due process); *United States ex rel. Houston v. Warden, Stateville Correctional Center*, 635 F.2d 656, 658 (7th Cir. 1980)(holding that *Morrissey*-type hearing procedures are not required for disciplinary proceedings); *Robinson v. Benson*, 570 F.2d 920, 923 (10th Cir. 1978)(because the right to call witnesses is conditional in the context of a prison disciplinary proceeding, it is not absolutely essential in a parole rescission proceeding to satisfy due process).

**B. Petitioner waived his opportunity to have witnesses at his disciplinary hearing.**

On February 23, 2005, the BOP notified the petitioner that he had the right to call witnesses for his disciplinary hearing, but he did not indicate that he wished to call any witnesses. (App.22)  The BOP provided the petitioner with a disciplinary hearing on February 24, 2005, the petitioner was again given the opportunity to call witnesses, and he again indicated that he did not wish to call any witnesses.  (App.23)  Therefore, the petitioner had the opportunity to have witnesses present at his disciplinary hearing, but failed to avail himself of that opportunity.

11

### C. The Commission is entitled to rely on the BOP's findings.

Once the BOP has made a determination of guilt, as the result of a disciplinary proceeding, the Commission is entitled to rely on that determination. *See Kramer v. Jenkins*, 803 F.2d 896, 901 (7th Cir. 1986)(the finding of one government agency need not be subject to collateral attack by another agency). When the BOP notifies the Commission of its finding, the Commission is not required to conduct its own proceeding or obtain evidence that would be required to support a criminal charge in court. *Id*. at 901 (the Commission "must have a reason for its decision").  The opportunity to be heard is all that the Constitution requires for the Commission to conduct its fact-finding. *Id*.; *Van Curen v. Jago*, 641 F.2d 411, 417 (6th Cir. 1981)(due process requires notice of an intent to consider rescission, an opportunity to be heard, and, if parole is rescinded, the reasons for rescinding parole and the evidence relied upon), *rev'd on other grounds*, 454 U.S. 14 (1981).

In this case, the petitioner received written notice of the Commission's intent to conduct a rescission hearing and the charges that would be considered. (App.26)  A rescission hearing was conducted at which the petitioner had the opportunity to speak to the charges of misconduct and to present documentary evidence in his favor.  Finally, the petitioner received a notice of action rescinding his parole date and providing the reasons and evidence that the Commission relied upon.  More was not required to satisfy due process. *See Wolff*, 418 U.S. at 565-66; *Kramer*, 803 F.2d at 901.

Once the Commission has conducted the hearing, judicial review of the Commission's decision is limited to whether there was "some evidence" in

support of the decision. *Kramer*, 803 F.2d at 901 (judicial review is limited because parole decisions are committed to agency discretion). The BOP's finding that the prisoner has committed a violation of the rules is conclusive evidence of institutional misconduct that the Commission may rely upon to make its finding of fact. *See* 28 C.F.R. § 2.34(c); *Kramer*, 803 F.2d at 901. Therefore there was "some evidence" to support the Commission's decision to rescind the petitioner's parole date.

### D. Petitioner's conduct constituted new criminal conduct in the community.

The petitioner claims that the Commission did not have credible evidence to conclude that he had threatened someone with bodily harm because there were no charges filed with the police alleging that he committed a new criminal offense. As discussed above, the phrase "[n]ew criminal behavior in the community" is defined as "[O]ffenses committed in a prison or in a community corrections center that are not limited to the confines of the prison or community corrections center . . . ." *See* 28 C.F.R. § 2.36(a)(3), note. Here, since the misconduct occurred while the petitioner was participating in the work release program and the victim was someone outside of the confines of the community corrections center, the misconduct was categorized as new criminal behavior in the community.

The fact that the petitioner had not been arrested or charged by local authorities is of no consequence because the Commission may make its own independent finding of criminal behavior in the case of uncharged, unadjudicated, or dismissed criminal conduct. *See Rivera v. United States*, 1993 WL 257480, at *4 (N.D. Ill. July 8, 1993), *aff'd*, 25 F.3d 1053, 1994 WL 198784 (7th

Cir. 1994)(Table)(Commission has the authority to make its own independent finding of criminal behavior where local charge was dismissed); *Robinson*, 570 F.2d at 923 (dismissal of state criminal charges did not remove the basis for the Parole Commission's decision to rescind parole); *Mullen v. United States Parole Comm'n*, 756 F.2d 74, 75 (8th Cir. 1985)(the prosecutor's conclusion that the evidence was insufficient to prove a criminal charge had no bearing on Commission's consideration of the charge); *Standlee v. Rhay*, 557 F.2d 1303, 1305 (9th Cir. 1977)(the Commission may make an independent finding of a crime despite acquittal).

### III.  Violation of a condition of a community program.

The petitioner claims that the BOP "drummed up" the charge of violating a condition of a community program. According to the petitioner, he went to the Casey's every day, along with co-workers, to get lunch because lunch was not provided by the CCC. The petitioner exhausted his administrative remedies. (App.40-45)

Mary Herman, Program Coordinator, was advised that at 11:15 a.m., the petitioner had left his job and was walking toward the jail, approximately three blocks and a 10-minute walk away. (App.20)  At 11:35 a.m., the petitioner called the jail to ask about his paycheck, and, when asked where he was, stated he was at "the store." (App.20)  The petitioner was given five minutes to return to the jail and did so. (App.20)  The petitioner was charged with violating his work release program because he did not have permission to go to the Casey's. (App.20)

A Discipline Hearing Officer's ("DHO") decision satisfies due process when it is supported by some evidence in the record. *Superintendent, Mass. Corr.*

14

*Inst., Walpole v. Hill*, 472 U.S. 445, 455 (1985). "The 'some evidence' standard requires [the reviewing court] to ask whether there is *any* evidence in the record that could support the DHO's conclusion." *Henderson v. United States Parole Comm'n*, 13 F.3d 1073, 1077 (7th Cir. 1994)(emphasis in original; citation omitted).

In ascertaining whether the "some evidence" standard has been met, "courts are not required to conduct an examination of the entire record, independently assess witness credibility, or weigh the evidence, but only determine whether the prison disciplinary board's decision . . . has some factual basis." *Meeks v. McBride*, 81 F.3d 717, 719 (7th Cir. 1996). Under this standard, the evidence need not "logically preclude[ ] any conclusion but the one reached by the disciplinary board." *Hill*, 472 U.S. at 457. A court will overturn the DHO's decision "only if no reasonable adjudicator could have found [the prisoner] guilty of the offense on the basis of the evidence presented." *Henderson*, 13 F.3d at 1077 (citations omitted).

Here, there was some evidence to support the finding of guilt. The CDC supported its findings based on the incident report and information gathered during the investigation and provided at the hearing. Moreover, the petitioner admitted that he was at the "store" to the Program Coordinator and knew that he did not have the approval to do so.

IV. **The Commission had a factual basis for its decision to exceed the rescission guidelines.**

The petitioner challenges the merits of the Commission's decision to depart from the guidelines, claiming that it was based on "incorrect information."

15

It is well settled in this circuit that judicial review is limited where Congress has committed the action to agency discretion.[4] *See Solomon v. Elsea*, 676 F.2d 282, 290 (7th Cir. 1982)("A court of review need only determine whether the information relied on by the Commission is sufficient to provide a factual basis for its reasons"); *Kramer*, 803 F.2d at 901 (judicial review is limited to whether there was "some evidence" to support the decision).

The Commission based its decision to depart from the rescission guidelines on the petitioner's criminal record, which was obtained by reviewing documents in his file. (App.29-30)  The petitioner argues that the Commission has incorrect information, but does not provide any information which would show that any of the twelve convictions in his record were vacated or reversed, nor has he provided evidence to contradict the information available to the Commission.

Therefore, the Commission had a factual basis for its conclusion that the petitioner was a poorer risk and a more serious risk for release on parole.

---

[4]Under D.C. law, there is no judicial review of parole decisions on their merits. *See Allston v. Gaines*, 158 F.Supp. 2d 76, 79 (D.D.C. 2001)(judicial review limited to whether there has been an abuse of discretion); *Smith v. Quick*, 680 A.2d 396, 398 (D.C. 1996) (limiting review to procedures used to deny parole).

## **CONCLUSION**

For the foregoing reasons, the petitioner's application for writ of habeas corpus should be denied.

Respectfully submitted,

UNITED STATES OF AMERICA

RODGER A. HEATON
UNITED STATES ATTORNEY


/s Thomas A. Keith
Thomas A. Keith
Assistant United States Attorney
211 Fulton, Suite 400
Peoria, Illinois 61602
Telephone:  309/671-7050

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 2, 2005, I electronically filed the foregoing Response to Petition for Writ of Habeas Corpus Brought Pursuant to 28 U.S.C. § 2241 and Appendix with the Clerk of the Court using the CM/ECF system, and I hereby certify that a copy of the Response and Appendix has been made on the petitioner by depositing a copy thereof in the United States mail, postage prepaid, addressed to:

>   Joseph Thompson
>   Reg. No. 11874-007
>   FCI Pekin
>   P.O. Box 5000
>   Pekin, IL 61555-5000

>   s/ Stephanie Pennington
>   Paralegal Specialist