**E-FILED**
Monday, December 12, 2005 12:35:24 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

**FILED**

DEC 1 2 2005

JOHN M. WATERS, Clerk
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

JOSEPH THOMPSON,                    )

     Petitioner,                       )

     v.                                )          No.  05-1267

                      )

                      )

UNITED STATES PAROLE              )
COMMISSION,                          )

     Respondant.                       )

## PETITIONER'S REPLY TO RESPONDANT'S RESPONSE
## TO PETITION FOR WRIT OF HABEAS CORPUS §2241

Now comes the petitioner Joseph Thompson, acting pro se
and respectfully submits petitioner's reply to respondent's
response to petition for writ of habeas corpus 28 U.S.C. §2241
and states the following:

Petitioner denies all allegations alledged in the United
States Parole Commissions response.

### RESPONDANT'S STATEMENT OF FACTS

The respondant's statement of facts omits essential facts
that supports petitioner's claim that his parole was in effect
when the parole commission conducted a rescission hearing to
revoke his parole. The respondant fails to state the fact that
petitioner signed his certificate of parole on February 25, 2005,
at the Benton County Work Release Program. Respondant fails to
provide a copy of petitioner's signed certificate of parole
dated February 25, 2005. Petitioner's signed certificate of
parole is in the possession of the United States Parole Commission

1.

1:05-cv-01267-JBM  # 7  Page 2 of 23

or Mary Herman, Program Coordinator, Benton County Work Release Center and petitioner has been unable to obtain a copy to present to the court in support of his claims.

On February 25, 2005, Mary Herman, Program Coordinator, Benton County Jail, presented a Certificate of Parole to petitioner and instructed him to sign and date the certificate. After signing and dating the certificate of parole Mary Herman retained possession of the certificate and said she had to fax a copy to the Parole Commission and that petitioner would be provided with a copy later that day or the next morning upon his leaving the Benton County Program. (See copy of letter to Mary Herman Program Coordinator, requesting copy of certificate of parole that petitioner signed on 2/25/2005). Title 28 C.F.R. §2.86(e) provides "A grant of parole becomes operative upon the authorized delivery of a certificate of parole to the prisoner and the signing of that certificate by the prison who thereafter becomes a parolee". Petitioner's parole had become affective by virtue of his signing of the certificate of parole and the Parole Commission abused its discretion by revoking petitioner's parole through a "rescission hearing" which denied petitioner of his due process rights to a "revocation hearing" under the standards of <u>Morrissery v. Brewer</u>, 408 U.S. 471 (1972). If petitioner had been granted a "revocation hearing" pursuant to <u>Morrissery</u> there would have been a different outcome to this case. At a revocation hearing counsel would have been appointed

2.

to represent petitioner and petitioner would have been entitled
to a local revocation hearing where witnesses and the unknown
accuser would have been called to testify and be cross-examined
by counsel. At a revocation hearing petitioner can prove that
he never threatened anyone at Dombrovski Meat Company. Witnesses
would testify that petitioner never threatened them. At a
revocation hearing it would also be determined through questioning
of Mary Herman, Program Coordinator that petitioner petitioner
was not expected to work all day with no lunch and that petitioner
had permission to leave Domdrovski Meat Co. building to purchase
food items for his lunch and that when petitioner placed a call
to the Benton County jail he was on his lunch hour at Casey's
Store where he went everyday with his fellow co-workers to purchase
his lunch. Petitioner did have permission to go to Casey's Store
on his lunch hour and he did not violate conditions of the work
release program.

The respondant's statement of facts incomplete and co-mingled
with accusations. Petitioner denies all accusations presented
in respondant's statement of facts.

### PAROLE COMMISSION CONDUCTED FURTHER HEARING'S
### IN THIS CASE WITHOUT JURISDICTION TO DO SO

The respondant admits that the Parole Commission made a
procedural mistake in deciding to "deny" petitioner parole and
continue to a rehearing in June 2008. (See Respondant's response
page 5,6 and 7). The respondanr states "Upon review of this case
in preperation for the government's response, the Commission's
legal office discovered that an additional Commissioner's vote
in agreement with the hearing examiner panel or with the two

3.

Commissioner panel, had not been obtained before the Commission
issued its decision. The legal office discovered that the
reasons provided on the notice of action dated August 11, 2005,
for exceeding the guidelines were in error because they did not
accurately the reasons specified on the adendum to the hearing
summary.(App.34) On November 30, 2005, a final vote was obtained
which was in agreement with the decision to deny parole and
schedule a rehearing in June 2008. (App.31). On December 1, 2005,
the Commission issued a corrected notice of action  solely to
correct the reasons that had been previous notice of action of
action for exceeding the guidelines of 12 to 16 months........ ,

     Once petitioner filed his petition for a writ of habeas
corpus and the Court issued a show cause order to the United
States Parole Commission, the Commission was deprived of further
jurisdiction to conduct any hearings or make any changes in
petitioner's case. Instead of conducting further hearing's the
Parole Commission should have notified the District Court that
a critical mistake had been made in the determination to "deny"
petitioner parole and continue him to June 2008. Additionally
petitioner has not been provided with a copy of any corrected
notice of action by the Parole Commission.

     Petitioner moves the court to issue an additional order
to the Parole Commission requiring the Parole Commission to
grant petitioner a "local revocation" hearing or to reinstate
petitioner on parole based on the numerous mistakes and errors
of law made in this case. The Parole Commissions decision

4.

to deny parole is unreliable because it is based solely on a
single piece of hearsay accusations supported by no proof
whatsoever and based on numerous procedural errors that render
the entire proceedings unconstitutional.

## JURISDICTION

The respondant claims that the United States Parole Commission
is not the proper respondant and asks the court to "strike the
U.S. Parole Commission as respondant and to substitute the Waren
of the Federal Correctional Institution, Rick Veach, as the sole
respondant, in order to comply with requirements of 28 U.S.C.
§2243 ("The writ or order to show cause shall be directed to the
person having custody of the person detained"). The federal court's
have held that "Actions of parole Commission may be challenged
only habeas corpus proceedings initiated pursuant to §2241 in
district in which individual is incarcerated". See Fernandez v.
U.S., 941 F.2d 1488 (11th Cir. 1991). The respondant cites no
authority supporting its theory that the Parole Commission cannot
be named in a Hebeas action under §2241. The respondant gives
no authoratative reason why Warden Rick Veach should be named
as "the sole respondant" other than its interpretation of 28
U.S.C. §2243, which is not supported by law.

## D.H.O. HEARING

The respondant states page 9, of its response "A. A petitioner
is not entitled to confront his accuser at a disciplinary hearing
as a right".

5.

The respondant confuses the issue . Petitioner's complaint is
that he was not allowed attend the D.H.O. as required by law
and constitutional due process. (See Habeas Petition page5).
Title 28 C.F.R. §541.17 (c) and (d) provides, "(c) The inmate
is entitled to make a statement and to present documentary
evidenec in the inmates own behalf. An inmate has the right to
submit names of requested witnesses and have them called to
testify ........ D.H.O. shall call those witnesses who have
information directely relevant to the charge". "(d) An inmate
has a right to be present throughout the DHO hearing ......
The DHO must document in the record the reason(s) for excluding
an inmate from a hearing".

     The D.H.O. hearing conducted without petitioner's presence
was the linch pin on which this case turns because the U.S.
Parole Commission relied upon the DHO hearing findings to
find that petitioner "Violated conditions of a Community Program
and threatening another with bodily harm" (See Habeas petition,
Exhibit c, page 2). The DHO findings were made in violation of
statutory law 28 C.F.R. and petitioner's due process rights
under the Fifth Amendment and the DHO findings are unreliable
because the DHO conducted no investigation into the allegations.

     When petitioner attended the U.D.C. hearing at the Benton
County Jail, with his Staff representative Laurel Lanish, he
denied the charges and requested that he be provided with the
name or names of the employee's at Dombrovski Meat Co. who

6.

alledgely accused him of threatening them with bodily harm so
he could call them as witnesses and face his accusers and
question them about the charges. The U.D.C. Staff told petitioner
that they had not been provided with any names of the accusing
employees at Dombrovski Meat Co. Because petitioner was not
provided with the names of his accusers he could not name any
witnesses to call. Petitioner did not waive his right to call
witnesses as he was never provided with any information as to
who the witnesses might be.

From the very beginning of this case all authority figuers
have relied solely on a single unsworn accusation made by
unidentified person or persons in the form of a letter from
some person named "Julie" Personnel, Dombrovski Meat Co. (See
habeas petition, Exhibit B). The letter from Julie contains
no named complaintants or victim of the alledged threats, no
listed times date or circumstances concerning the threats.
The respondant presents no evidence or even mentions the
undeniable fact that no authority figure involved in this case
conducted an investigation into the accusations made against
petitioner. No one from the Community Program at the Benton
County Jail went to Dombrovski Meat Co. to interview the employees
who alledgely made the accusations against petitioner. There is
no evidence that Mary Herman, Program Coordinator, went to
Dombrovski Meat Co. to interview employees or investigate the
cahrges against petitioner to determine the truth or reliability

7.

of the allegations and information contained in the single
letter from "Julie".

Without any investigation into the reliability of the
accusations against petitioner the Community Program U.D.C.,
the Bureau of Prisons D.H.O. and the Parole Commission have
taken for face value the unsworn accusations in a single letter
against petitioner are true and factual without any evidence
whatsoever to support the accusations.

The respondant contends that the"Parole Commission may make
its own independant findings of criminal behavior" and that
"Petitioner's conduct constituted new criminal conduct in the
community". (Response page 9). The respondant presents no
evidence that the Parole Commission conducted its own independant
findings. The facts and records show that all the Parole Commission
has done is to rely on the Bureau of Prisons D.H.O. findings
(which were made in violation of petitioner's due process rights)
and the D.H.O. conducted no investigation of its own but relied
on the Community Program U.D.C. findings and the U.D.C. conducted
no investigation of the accusations made against petitioner.

Dombrovski Meat Co. was located just three blocks from the
Community Program Center in the Benton County Jail. Why didn't
Mary Herman or other law enforcement official go the Dombrovski
Meat Co. and question the employees petitioner was alledged to
have threatened with bodily harm. Why didn't Mary Herman
Program Coordinator pick up the telephone and call Dombrovski

8.

Meat Co. and ask to talk to the employees petitioner was to have threatened with bodily harm. The records and facts show that no investigation was ever conducted into the accusations alledgely made against petitioner.

### **VIOLATION OF A CONDITION OF A COMMUNITY PROGRAM**

The respondant claims that petitioner violated a condition of the community Program by being at Casey's Store without permission. When viewing this allegation a trier of fact must take a common sense approach. The facts show that the Work Release Program did not provide prisoners with lunches for thier noon meals therefore petitioner had to obtain his own food for his lunch meal or go hungery. There was no food sold inside Dombrovski Meat Co. building so petitioner had to leave the building at lunch time to obtain food for his lunch as did some of the other employees.  Mary Herman Program Coordinator, had given petitioner permission to leave Dombrovski Meat Co. buidling only on his lunch hour to purchase food for his lunch. Would Mary Herman require petitioner to work all day without any food for lunch. Pursuant to law she could not do that. When petitioner called the Community Program Center to see if his pay check was there he was calling from Casey's Store on his lunch hour at approximately 11:30 a.m.. The U.D.C. report leaves out the fact that petitioner was on his lunch hour and had permission to leave Dombrovski Meat Co. to purchase food for his lunch.

9.

## THE COMMISSIONS DECISION TO DEPART FROM THE
## RESCISSION GUIDELINES IS BASED ON AN ERRONEOUS
## INTERPRETATION OF PETITIONER'S PRIOR CONVICTIONS

Once the Commission erroneously revoked petitioner's parole
through a "rescission hearing" instead of the required "revocation
hearing" the Commission departed from the rescission guidelines
based on a mistaken finding that petitioner had "12 convictions
within 15 year period" (See Response Appendix page 32). The
Parole Commission's reading of petitioner's Criminal History
Record is in error. The Commission reads "arrests", and "dismissed"
charges as "criminal convictions". Petitioner's Criminal History
Records show that  petitioner has five (5) adult criminal
convictions and one juvenile conviction for a total of six (6)
criminal convictions in all.(See Exhibit B. Exhibit B is copy
of petitioner's current Presentence Report that shows his PRIOR
CRIMINAL RECORD ).  Although petitioner's criminal history record
shows numerous arrests and charges that were dismissed petitioner
has only six (6) convictions in all. "In determining prisoner's
severity, Parole Commission should seperate those offenses for
which prisoner pled or was found guilty from those which were
not charged or for which counts were dismissed. Allenv. Hadden,
536 F. Supp. 586, Id at 595 (1982).also Romano v. Baer, 805
F.2d 268, 271 (7th Cir. (1986). The erroneous calculation of
petitioner's prior convictions adds to the totality of mistakes
and errors made in this case that renders the Commission's
decisions unreliable

"Upon a finding of violation of due process with respect to
rescission of prisoner's parole, district court had the authority

10.

to require Parole Commission to conform to earlier decision to
release prisoner on parole on particular date and thus, since
such date had passed, to order prisoner's release". Green v.
Nelson, 442 F.Supp. 1047, Id at 1059 (1997) "Parole regulations
allow the Parole Commission to treat IDC decisions as conclusive
evidence of institutional misconduct, 28 C.F.R. §2.34(a)(2),
42 Fed. Reg. 39817 (Aug 5, 1977) However, the parole Commission
may do so  only if the IDC proceedings themselves meet the
rigorous due process standards. Green, Id at 1059.

## CONCLUSION

Because of the numerous errors and due process violations
made in this case by the Community Program's UDC and the Bureau
of Prisons DHO and the U.S. Parole Commission and because
petitioner's  parole release date has already passed the court
should issue an order directing the Parole Commission to reinstate
petitioner's parole and release him forthwith. Justice demands
no less. And what other relief the court deems necessary.

Respectfully submitted

Joseph R. Thompson
Joseph Thompson
Petitioner, pro se.

Joseph Thompson
#11874-007
Federal Correctional Institution
P.O.Box 5000
Pekin, Illinois. 61555

11.

## Certificate Of Service

I, Joseph Thompson, swear under penalty of perjury that
I have mailed a copy of the foregoing PETITIONER'S REPLY TO
RESPONDANT'S RESPONSE TO PETITION FOR WRIT OF HABEAS CORPUS
§2241, to Thomas A. Keith, Assistant United States Attorney,
211 Fulton Street, Suite 400, Peoria, Illinois. 61602, by
placing said Reply in a prepaid postage envelope and depositing
same in the Legal Mail Box at the Federal Correctional Institution
at Pekin, Illinois, this ___8___ day of December 2005.
(28 USC §1746).

Joseph Thompson
#11874-077
FCI Pekin
P.O.Box 5000
Pekin, Illinois. 61555

Joseph Thompson
Reg. No. 11874-007
Federal Correctional Institution
P.O.Box 5000
Pekin, Illinois. 61555

July 26, 2005.

Re: Request for Records.

Mrs. Mary Herman
Program Coordinator
Community Corrections Center
Benton County Jail
581 Hwy 23 NE
Foley, Minnesota. 56329

Dear Mrs Herman,

I am sure you remember me and the circumstances of my being
a resident in the Community Program Center work release program.
On February 25, 2005, you called me to your office and requested
that I sign a Certificate of Parole. If you remember I signed the
certificate of parole and dated it. At that time you stated that
I would be given a copy of the Certificat of Parole later that
same day. I never received a copy of the Certificate of Parole.
I am now requesting that you send me a copy of that Certificate
of Parole that I signed and dated on February 25, 2005.

If you do not have possession of that certificate of parole
would you please advise me as who has it now so I may contact that
person or agency to obtain a copy of the certificate in question.
Thank you for your assistance in this matter.

Sincerely
Joseph Thompson

cc/file                                         Exhibit - A



# Court Services and Offender Supervision Agency for the District of Columbia

*Adult Probation*

## PRESENTENCE REPORT

|  |  |  |  |
|---|---|---|---|
|  |  | **PDID No:** | 383-809 |
|  |  | **Docket No:** | F-3393-99C |
| **RE:** | Joseph Thompson | **Date Referred:** | 8-18-99 |
| **To:** | The Honorable Melvin R. Wright | **Date Due:** | 9-24-99 |
| **From:** | Probation Officer Allan Katz | **Sentencing Date:** | 9-28-99 |

### DEFENDANT INFORMATION:

| | | | |
|---|---|---|---|
| **True Name:** | Joseph Raymond Thompson, Jr. | **Address:** | 5926 East Capital Street, N.E. Washington, D.C. 20019 |
| **Aliases:** | See Page Two | **Telephone:** | 202-388-9243 |
| **Age:** | 30 | **Birthdate:** | 6-25-69 |
| | | **Additional DOB:** | 5-25-69 |
| **Sex:** | Male | **Birthplace:** | Washington, D.C. |
| **Time in DC Area:** | Life | **Citizenship:** | United States |
| **Marital Status:** | Single | **Alien No:** | N/A |
| **Dependents:** | 0 | **Education:** | GED |
| **Social Security No:** | 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 | **Permit No:** | N/A |
| **Additional SSNo:** | 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 | | |
| **DCDC No:** | 236-180 | **FBI No:** | 320 300 JA7 |

### CASE INFORMATION:

**Offense, Code, & Penalty:**    UCSA, Attempted Possession With Intent to Distribute Cocaine; 33-549; $500,000 Up to 30 Years or Both

| | | | |
|---|---|---|---|
| **Plea:** | Guilty | **Judgment:** | Guilty |

**Bond Status:**    Committed Without Bond

**Detainers or Pending Charges:**    See Prior Criminal Record Section

**Co-defendants:** None

|  |  |  |  |
|---|---|---|---|
| | **Docket No:** | **Status:** | |
| | **Docket No:** | **Status:** | |
| **AUSA:** | Edward Parks | **Telephone:** | 202-514-7505 |
| **Defense Counsel:** | Christine Markel | **Telephone:** | 202-626-8374 |

"In accordance with the U.S. Parole Commission and Reorganization Act, Public Law 94-233, dated March 15. 1976, this report is disclosable to inmates in federal institutions for purposes of parole co

*Exhibit – B*

**ALIASES:**

Gregory Wilson

Joseph Raymond Johnson

Joseph R. Thompson

Joseph Thompson

Jerry Thompson

## CONTACTS:

9-21-99      Consultation with Deborah Ward-D.C. Probation Officer

9-22-99      Telephone contact with AUSA Parks

## OFFICIAL VERSION:

Please see attached Police Report.

### Known Injuries or Damages:

None indicated.

## DEFENDANT'S VERSION:

There is no Defendant's Version as this Presentence Report is an updated Report.

## PRIOR CRIMINAL RECORD:

### Washington, D.C.:

| 6-10-88 | Receiving Stolen Goods F-6721-88A | No Papered 6-11-88 | DCSC |
|---|---|---|---|
| | Theft First Degree Count B | No Papered 6-11-88 | " |
| | Unauthorized Use of An A Vehicle Count C | Indicted (closed) | " |
| | Theft First Degree Count D | Dismissed 4-25-89 | " |
| | Receiving Stolen Goods Count E | Dismissed 4-25-89 | " |

## PRIOR CRIMINAL RECORD (continued):



Q:\Felony\Katz\F-3393

|  | Unauthorized Use of A Vehicle<br>Count F | Dismissed 4-25-89 | DCSC |
|---|---|---|---|
| 11-15-88 | Bail Reform Act-Felony<br>F-13555-88A | No Papered 11-16-88 | " |
|  | UCSA, Distribution of PCP<br>Count B | Indicted (closed) | " |
| ① | UCSA, Distribution of PCP<br>Count C | Pled to Lesser Included Offense<br>3-13-89 | " |
|  | UCSA, Distribution of<br>Marijuana<br>Count D | Dismissed 4-25-89 | " |
|  | UCSA, Attempted<br>Distribution of PCP<br>Count E | Sentenced on 4-25-89 to 1-3 years,<br>ESS, 18 months of supervised<br>probation; administratively closed on<br>12-30-90 | " |
| 10-21-89 | UCSA, Distribution of<br>Cocaine<br>F-12247-89A | Indicted (closed) | " |
|  | UCSA, Distribution of<br>Cocaine<br>Count B | Pled to Lesser Included Offense<br>4-18-90 | " |
|  | UCSA, Possession With<br>Intent to Distribute Cocaine<br>Count C | Dismissed 10-30-90 | " |
| ② | Attempted Distribution of<br>Cocaine<br>Count D | Sentenced on 10-30-90 to 5-15 years,<br>ESS, 5 years supervised probation;<br>probation revoked on 9-16-91, and<br>sentenced to 15 to 45 months; paroled<br>6-23-93; and returned as a parole<br>violator on 11-22-94 → parole not revoked ended in '94 | DCSC/<br>PSA/<br>DCDC |

## PRIOR CRIMINAL RECORD (continued):

| 12-21-93 | Fugitive From Justice | No Papered 12-22-93 | DCSC |
|---|---|---|---|



Q:\Felony\Katz\F-3393-99C-Thompson.doc

S-2763-93A

| 8-18-94 | UCSA, Distribution of Heroin F-8000-94A | No Papered 8-19-94 | " |
| | UCSA, Distribution of Cocaine Count B | No Papered 8-19-94 | " |

**Prince George's County, MD:**

| 9-19-94 | Forgery; Uttering | No disposition on both counts | FBI MDPP |

**Washington, D.C. :**

| 11-22-94 (Offense date 11-22-94) | Unauthorized Use of A Vehicle F-11496-94A | Indicted (closed) | DCSC |
| (Offense date 7-14-94) | Receiving Stolen Goods Count B | Dismissed 4-13-95 | " |
| (Offense date 11-22-94) | Unauthorized Use of A Vehicle Count C | Pled to Lesser Included Offense 4-13-95 | " |
| (Offense date 11-22-94) | Attempted Unauthorized Use of A Vehicle Count D | Sentenced on 4-13-95 to 180 days work release | " |
| 11-22-94 (Offense date 10-31-94) | Fugitive From Justice S-2698-94A | Returned to Court 11-29-94 | " |

**Prince George's County, MD:**

| 5-3-95 | Theft Over $300 – Auto | No Disposition | FBI/ MDPP |

**Washington, D.C.:**

| | | | |
|---|---|---|---|
| 12-15-97<br>(Offense<br>date<br>12-15-97 | Unauthorized Use of A<br>Vehicle<br>F-9710-97A | Indicted (close) | DCSC |
| (Offense<br>date<br>11-9-97) | Receiving Stolen Goods<br>Count B | Dismissed 1-28-99 | " |
| 12-15-97<br>Offense<br>Date<br>12-14-97) | Unauthorized Use of A<br>Vehicle<br>Count C | Pled to Lesser Included Offense<br>12-9-98 | " |
| (12-15-97<br>Offense<br>Date<br>12-15-97) | Attempted Unauthorized Use<br>of A Vehicle<br>Count D | Sentenced on 1-28-99 to 180 days,<br>ESS, 18 months supervised probation | " |
| 12-15-97 | Bail Reform Act –<br>Misdemeanor<br>Count E | Sentenced on 1-28-99 to 60 days,<br>ESS, 18 moths supervised probation | " |

**Prince George's County, MD:**

| | | | |
|---|---|---|---|
| 2-2-98 | Auto Theft ;<br>Theft Over $300;<br>Unauthorized Use of A<br>Vehicle | Bench warrant issued on all counts<br>6-22-99, and outstanding in warrant<br>number: 169152853 | FBI/<br>PSI/<br>MDPP |

**Washington, D.C.:**

| | | | |
|---|---|---|---|
| 12-9-98<br>(Offense<br>date<br>5-29-98) | Escape From An Institution<br>F-8178-98A | Information filed 12-9-98 | DCSC |
| | Escape From An Institution<br>Count B | Sentenced on 1-28-99 to 4-12<br>months, ESS, 18 months supervised<br>probation; Show Cause Hearing<br>scheduled 9-30-99 | " |

**PRIOR CRIMINAL RECORD (continued):**

| | | | |
|---|---|---|---|
| 5-19-99 | UCSA, Possession With<br>Intent to Distribute Cocaine<br>F-3393-99A | Indicted (closed) | DCSC |

Q:\Felony\Katz\F-3393-99C-Thompson.doc

Possession With Intent to          Pled to Lesser Included Offense          "
Distribute Cocaine                 8-18-89
Count B

 UCSA, Attempted Possession   Instant Offense                          "
With Intent to Distribute
Cocaine
Count C

**Note:** The defendant has no record, according to the Intrafamily Court computer in Washington, D.C.

## PROBATION/PAROLE/PRE-DISPOSITION ADJUSTMENT:

Mr. Thompson was placed on D.C. supervised probation for five years on 10-30-90, for UCSA, Attempted Distribution of Cocaine in F-12247-89D. The defendant incurred no rearrests during this probation period, but his probation was revoked on 9-16-91, at which point he was sentenced to 15 months to 45 months incarceration.

The defendant was paroled on 6-23-93, and eventually returned as a parole violator on 11-22-94, for the offense of UCSA, Attempted Distribution of Cocaine, in F-12247-89D.

Mr. Thompson was placed on D.C. supervised probation on 1-18-99, for an Escape charge in F-8178-98B, and for an Attempted Unauthorized Use of A Vehicle and Bail Reform  Act-Misdemeanor offenses in F-9710-97D,E. He was sentenced on 1-28-99, to 18 months probation concurrent for these offenses and his probation officer is Deborah Ward; telephone number 202-508-1968. The defendant's overall reporting has been poor. He failed to report to the Probation Office on 3-11-99, 3-18-99, 4-8-99, and 5-14-99. He failed to report for drug testing on 2-10-99, and 2-11-99. On 3-24-99, he was tested positive for cocaine and opiates. He also was arrested on 2-2-98, in Prince George's County, Maryland, for Auto Theft, Theft Over $300, and Unauthorized Use of A Vehicle. These cases are in bench warrant status as of 6-22-99. The defendant was also rearrested for the Instant Offense on 5-19-99, and has a Show Cause Hearing scheduled on 9-30-99, for the Escape From An Institution charge in F-8178-98B.

## EMPLOYMENT HISTORY:

The defendant was not interviewed as this is an update Report. According to a previous Presentence Report, which was prepared in December 1998 to January 1999, the defendant indicated he was last employed with a temporary agency by the name of Ready Personnel, located in Washington, D.C. The probation officer that prepared that report telephoned that

## EMPLOYMENT HISTORY (continued):

Agency and her calls were never returned. The defendant's girlfriend, Sheila Jones, mailed original check stubs to the probation officer as employment verification for this job.

## SOCIAL HISTORY:



**Sources of Verification:** Probation records; Deborah Ward, D.C. Probation Officer

### Family History

The defendant was born in Washington, D.C., on 6-25-69, to Diane Wilson and Joseph Thompson, Sr., the defendant is the only child. His father died when he was six years old. The defendant indicated that his father suffered from sickle cell anemia, which is a trait that the defendant presently carries.

Mr. Thompson was reared by his grandparents, Helen and Charles Wilson, in Washington, D.C.. He describes his childhood as normal and indicated he had everything that he needed. He attended D.C. Public Schools during grade school, along with his eight siblings. The defendant claims to have four uncles and two aunts, none of whom have abused drugs or alcohol. Overall, the defendant stated that he had a good relationship with all of his family members.

The defendant claims to have been reared in a rough neighborhood. Despite his surroundings, he admitted to the Probation Department that his grandparents did their best to keep him and his siblings on the "right track". He indicated to the Probation Department that he was a, "hard head" and often was in trouble. According to the defendant, he disobeyed curfews, along with his grandparent's rules and regulations. He also admitted to "hustling" at an early age. When asked why he "hustled", he stated that he liked nice things and wanted to be independent.

### Education and Training

Mr. Thompson did not know why he dropped out of H.D. Woodson High School. However, he received his GED while incarcerated at the Lorton Reformatory in 1990. The defendant mentioned that he received various vocational skills while at the Lorton Reformatory and indicated that he is familiar with repairing home and doing different types of construction work.

### Military

Mr. Thompson has never served in the United States Armed Forces and claims to have registered with the Selective Service System, as required by law.

### Marital Status and Living Arrangements

The defendant indicated in a previous Probation Report that he lived with his grandmother until approximately two or three years ago. According to his statements, he contributed to the household expenses whenever he was working. The defendant has never been married and stated he has no children. Before his incarceration in 1998, the defendant stated he had lived with his girlfriend, Sheila Jones, at 3605 55th Avenue, in Hyattsville, Maryland. Mr. Jones forwarded of their lease to the Probation Department for verification.

Financial Status

The defendant is currently committed to D.C. Department of Corrections and has no outstanding debts or bills, and no regular source of income.

Health

The defendant indicated that he is in good physical health. He denies having any psychiatric problems and states he has never had any treatment in this area. He did mention that he has the sickle cell anemia trait. It does not appear that he has been tested positive for tuberculosis.

Substance Use/Abuse

The defendant related that he began smoking marijuana and using alcohol as a teenager and may have begun as early as the age of 12. The defendant indicated that he does not consider himself to be an alcoholic, although he drinks beers on the weekends. He admitted to being drunk during the offense involving F-7910-98 and F-8178-98. Mr. Thompson was tested positive for cocaine and opiates as recently as 3-24-99.

## EVALUATION & DIAGNOSIS:

The defendant is a 30-year-old single male citizen of the United States, who pled guilty to UCSA, Attempted Possession With Intent to Distribute Cocaine. He is presently on D.C. supervised probation, as mentioned previously, and is scheduled for a Show Cause Hearing on 9-30-99, for the probation case of Escape From An Institution in F-8178-98B. The defendant's arrest record in Washington, D.C., dates back to June 10, 1988. He has also been arrested in Prince George's County, Maryland; and has a history of being arrested while on release status from other cases. He also has a history of having his probation revoked and has also been returned as a parole violator in Washington, D.C. as well. The defendant has primarily been arrested for drug-related cases, as well as for some theft charges. He has also been arrested for car theft-type offenses in Washington, D.C., and in Prince George's County, Maryland. As recently as March 1999, he was tested positive for drugs and any treatment plan involving this defendant should include mandatory drug treatment, but only in a highly confined environment. The defendant has apparently learned nothing from his previous periods of probation supervision and parole supervision. These sentencing alternatives have done nothing to deter him from further criminal activity and a period of incarceration is recommended. Mr. Thompson does not have much in the way of an employment record and it is hoped that he should learn a skill or trade, or further his education if he is incarcerated. If he is released, he should maintain regular employment as well.

## TREATMENT PLAN:

1.   Substance abuse treatment is recommended

2.   The defendant learn a skill or trade, or further his education



**RECOMMENDATION:**

Incarceration is recommended.

Respectfully submitted,

Allan Katz
Probation Officer
202-508-1909

Approved by: _Alan Peterson act. SPO_

John G. Robertson
Supervisory Probation Officer
202-508-1872