E-FILED
Monday, 27 February, 2006  08:59:46 AM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| JOSEPH THOMPSON, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Case No. 05-1267 |
| ) | |
| RICK VEACH, WARDEN, ) | |
| ) | |
| Respondent. ) | |

## O R D E R

Before the Court is Joseph Thompson's ("Thompson's") Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 [Doc. # 1]. In this petition, Thompson challenges the rescission of his parole. The Government has responded to the petition. For the reasons that follow, the petition will be denied.

### BACKGROUND

On September 28, 1999, Thompson was convicted in the District of Columbia for attempted possession with intent to distribute cocaine and sentenced to a term of three to nine years imprisonment. Thompson's first parole hearing took place on December 30, 2002.  This initial hearing was deferred until September 10, 2003, when the Parole Commission issued its decision to grant Thompson presumptive parole effective February 20, 2004, after service of 49 months. On July 19, 2004, the Parole Commission rescinded Thompson's parole date by 12 months for his admitted escape from the Hope Village Halfway House, making his new effective parole date February 26, 2005.

On January 5, 2005, Thompson was transferred to the Benton County Jail in Foley, Minnesota--a Community Correction Center-- where he participated in a work-release program as an employee for

the Dombrovski Meats Company.

At 11:00 a.m. on February 16, 2005, ten days before his scheduled parole date of February 26, 2005, Thompson's supervisor at Dombrovski Meats called Mary Herman, the Program Coordinator of the Benton County Jail to inform her that Thompson was going to be fired due to making inappropriate communications and threatening statements to his female co-workers. Specifically, the supervisor reported that Thompson had told a couple of female co-workers that "he could have them" and that "he could take care of their boyfriend or husband." When asked by the employees what he meant, he replied "he does none of the work himself, he just has connections and it will only take a phone call." Also during this supervisor's telephone call, Herman was informed that an employee who had been uncomfortable working with Thompson in the past and had subsequently avoided him, had claimed that Thompson approached her one day and said to her "that is fine that you do not want to talk to me, you are at a seven." The co-worker replied "Seven, what does that mean?" Thompson then allegedly said "You have till ten." Thompson refused to clarify these statements to the employee in question, but when asked for an explanation of "the seven-ten stuff" by another female co-worker, he replied "at seven you get hurt real bad and at ten you get killed."

Thompson was subsequently fired from his job, and charged by incident report with violation of Bureau of Prisons ("B.O.P.") Codes 203 and 309. The Center Discipline Committee ("C.D.C.")held a hearing on these violations and found Thompson to have committed them. Based on these findings, the Disciplinary Hearing Officer, ("D.H.O.") on February 25, 2005, recommended that Thompson's parole be retarded by 30 days.

One day before Thompson was to have been paroled, Karen

2

Jussila of the Benton County jail advised the United States Parole Commission that Thompson had recently been found in violation of B.O.P. Code 203, "Threatening Another with Bodily Harm." Subsequently, and pursuant to 28 C.F.R. § 2.86, the Parole Commission ordered Thompson's parole reopened and retarded effective on February 26, 2005, and scheduled a rescission hearing on the next available date. The hearing was conducted on June 29, 2005.

At the parole rescission hearing, the hearing examiner considered several statements from Thompson. Thompson claimed that the problems at his place of employment were due to ethnic and gender differences between himself, a black male, and his co-workers, who were white females. Thompson claimed that because of these differences in race and gender, his words and slang were misinterpreted, and he had not actually threatened anyone.

The Parole examiner found the statements of Thompson's fellow employees, as reported through their supervisor, more credible than Thompson's own interpretation of the events that took place. Subsequently, the examiner found that Thompson violated the rules of the institution, and recommended that Thompson's parole be rescinded by 16 months. The Parole Commission rescinded Thompson's effective Parole date of February 26, 2005, and denied parole. This petition followed.

**STANDARD OF REVIEW**

Authority to review decisions of the United States Parole Commission is limited to determinations of whether the decision constitutes an abuse of discretion. Solomon v. Elsea, 676 F.2d 282 (7th Cir. 1982). Under this standard of review, a district court may not review de novo the Parole Commission's findings of fact; rather the Court determines whether there is "some evidence tending to support the agency's decision." Kramer v. Jenkins, 803 F.2d 896, 901 (7th Cir. 1986). "The inquiry is not whether the Commission's decision is supported by a preponderance of the evidence or even by substantial evidence; the inquiry is only whether there is a rational basis in the record for the Commission's conclusions embodied in its statement of reasons." Solomon v. Elsea, 676 F.2d 282, 290 (7th Cir. 1982).

**ANALYSIS**

**A. The Parole Commission did not abuse its discretion by rescinding Thompson's parole after his effective parole date.**

In his Petition, Thompson argues that the Parole Commission abused its discretion by rescinding his parole after his effective parole date. Thompson argues that once his effective parole date had passed, he was on parole, and the Parole Commission should have conducted a revocation hearing rather than a rescission hearing to change his status.

The Court disagrees. "A grant of parole becomes operative upon the authorized delivery of a certificate of parole to the prisoner, and the signing of that certificate by the prisoner, who thereafter becomes a parolee." 28 C.F.R. § 2.86 (e). The passage of time does not grant parole, and subsequently, a presumptive date for parole is generally irrelevant in the determination of a prisoner's status. It is the authorized delivery of the certificate of parole,

the prisoner's signature on that certificate, and the prisoner's subsequent release that determine whether he has been paroled. A prisoner who has merely been granted a date for parole is not a parolee. Christopher v. United States Board of Parole, 589 F.2d 924, 932 (7th Cir. 1982).

Thompson never received or signed an authorized certificate of parole, and therefore was not paroled. Because Thompson was not yet paroled, the proper proceeding by the Parole Commission was a rescission hearing, not a revocation hearing. Id. at 930.

**B. The C.D.C.'s decision that Thompson violated B.O.P. Codes 203 and 309 did not violate Thompson's due process rights.**

The Supreme Court has set down three due process rights that prisoners have in the context of prison disciplinary hearings. First, prisoners have the right to advance written notice of the charges against them at least twenty-four hours before the hearing; second, prisoners must be afforded the opportunity to call witnesses and present documentary evidence in their defense when consistent with institutional and safety and correctional goals, and finally, prisoners are entitled to a written statement by the finder of fact (in this case, the C.D.C.) of the evidence relied on and the reasons for the disciplinary action. Superintendent, Mass. Corr. Inst., Walpole v. Hill, 472 U.S. 445 (1985). These requirements are carefully mirrored by the forms used at Thompson's disciplinary hearing. On February 23, 2005, Thompson was advised in a form entitled "INMATE RIGHTS AT CENTER DISCIPLINE HEARING," that "As an inmate charged with a violation of Center rules or regulations referred to the Discipline Committee for disposition, you have the following rights," which preceded a list of seven rights. Most pertinent is #3, which states that the inmate has "the right to call witnesses and present documentary evidence in [his]

behalf, provided center safety would not be jeopardized."

Thompson acknowledged that he had been advised of these rights by signature. Thompson then waived his right to a written copy of the charges against him 24 hours prior to appearing before the disciplinary committee, also by signature. Later the same day, Thompson was presented with a form entitled "NOTICE OF CENTER DISCIPLINE COMMITTEE HEARING," in which he indicated by checking a box that he wished to have a staff representative at the upcoming hearing, and selected "L. Yanish" (Laurel Yanish) to perform this function for him.

Immediately following the staff representative's name was another section informing the inmate of his right to call witnesses. Thompson initialed this section, which included three blanks containing a space for the name of a witness and a brief description of what each proposed witness would be able to testify to. All of these spaces were empty. Thompson also signed this form at the bottom with a full signature.

At 11:00 a.m. on February 24, 2005, the C.D.C. conducted a hearing for Thompson on the charges of Threatening Another with Bodily Harm and Violating a Condition of a Community Program (Unaccountability). The C.D.C. form entitled "CENTER DISCIPLINE COMMITTEE REPORT" ("Committee Report") revealed several important facts.

First, the Committee Report indicated that Laurel Yanish did indeed appear on behalf of Thompson as he had requested. Secondly, Subsection C of Section III, which was marked "Witnesses" read in Part 1: "the inmate requested witnesses: Yes/No/Na." "No" is clearly marked with a circle.

Section V read "SPECIFIC EVIDENCE RELIED ON TO SUPPORT FINDINGS." In this section, the Committee explained that, based on

information gathered from the investigation, hearing, and incident reports, Thompson violated B.O.P. Code 203 by threatening another with bodily harm, as well as B.O.P. Code 309 by stopping at a Casey's store without permission. It is clear from the evidence discussed above, that the C.D.C. afforded Thompson all three of his required due process rights at his disciplinary hearing.

**C. The Parole Commission's reliance on the C.D.C.'s findings of fact when deciding to rescind Thompson's parole did not violate Thompson's due process rights.**

Thompson argues that the Parole Commission abused its discretion in relying on the C.D.C.'s findings to rescind his parole, alleging specifically that the evidence used to determine his guilt was hearsay evidence without an exception and therefore, that the Commission's actions based on this evidence were a violation of his due process rights.

The Court disagrees. The requirements of due process are limited for parole rescission hearings. The decisions of the Parole Commission must have a factual basis, and the prisoner is entitled to some minimal due process. Kramer v. Jenkins, 803 F.2d 896, 901 (7th Cir. 1986) Christopher v. U.S. Bd. of Parole, 589 F.2d 924, 932 (1978). The Parole Commission is entitled to rely on the C.D.C.'s findings of fact. When the C.D.C. informs the Parole Commission of its findings of fact, the Parole Commission is not required to conduct its own proceeding. Kramer v. Jenkins, 803 F.2d at 901 (7th Cir. 1986).

The Court reiterates that it may review a Parole Commission's decision only for an abuse of discretion. Review of the Parole Commission's decision by the Court provides for "some inquiry" into the evidence upon which the Parole Commission based its decision, however, the inquiry is not whether the Commission's decision is

supported by any particular quality of evidence, such as evidence that would be admissible at a criminal trial. The inquiry is only whether there is rational basis in the record for the Commission's conclusions embodied in its statement of reasons. Solomon v. Elsea, 676 F.2d 282 (7th Cir. 1982).

The Court finds the C.D.C. forms, in which it provided reasons for finding Thompson guilty of violating B.O.P. Codes 203 and 309, provided the Parole Commission with a rational basis for rescinding Thompson's parole.  Further, the Commission was entitled to rely on the C.D.C.'s findings of fact in making its decision. Accordingly, the Court finds Thompson's due process rights were not violated when his parole was rescinded.

**D. The Commission did not abuse its discretion by deciding to rescind Thompson's parole by 16 months.**

Thompson claims that the Parole Commission abused its discretion in rescinding his parole for an additional 16 months. The Court disagrees.  Review of the Parole Commission's decision is limited to determination of whether the decision constitutes an abuse of discretion. Solomon v. Elsea, 676 F.2d 282 (7th Cir. 1982). In this case, the Parole Commission based the length of the rescission on Thompson's previous convictions and past failures to comply with the rules of the institutions to which he was confined. These factors were properly considered as a rational basis upon which parole was rescinded. Therefore, the Court need inquire no further into the particular methodologies that the Parole Commission used to determine the length of Thompson's rescission.

**CONCLUSION**

IT IS THEREFORE ORDERED that Joseph R. Thompson's Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 By a Person in Federal Custody [Doc. # 1] is DENIED.

CASE TERMINATED.

ENTERED this <u>24th</u> day of February, 2006.

    s/ Joe B. McDade    
JOE BILLY McDADE
United States District Judge
