E-FILED
Wednesday, 31 October, 2007  03:11:51 PM
Clerk, U.S. District Court, ILCD

# United States Court of Appeals

### For the Seventh Circuit

#### Chicago, Illinois 60604

## NOTICE OF ISSUANCE OF MANDATE

DATE:     October 30, 2007

TO:       John M. Waters
          United States District Court
          Central District of Illinois
          151 U.S. Courthouse
          600 E. Monroe Street
          U.S. Courthouse & Federal Building
          Springfield, IL 62701

FROM:     Clerk of the Court

RE:       06-2141
          Thompson, Joseph v. Veach, Rick
          05 C 1267, Joe Billy McDade, Judge

          Herewith is the mandate of this court in this appeal, along
          with the Bill of Costs, if any.  A certified copy of the
          opinion/order of the court and judgment, if any, and any
          direction as to costs shall constitute the mandate.

          [ ] No record filed
          [X] Original record on appeal consisting of:

**ENCLOSED:**                              **TO BE RETURNED AT LATER DATE:**
          [1]    Volumes of pleadings                    [ ]
          [ ]    Volumes of loose pleadings              [ ]
          [ ]    Volumes of transcripts                  [ ]
          [ ]    Volumes of exhibits                     [ ]
          [ ]    Volumes of depositions                  [ ]
          [ ]    In Camera material                      [ ]
          [ ]    Other_____  [ ]
                 _____
                 Record being retained for use          [ ]
                 in Appeal No. _____

          Copies of this notice sent to:      Counsel of record
          [ ]    United States Marshal
          [ ]    United States Probation Office

**NOTE TO COUNSEL:**
          If any physical and large documentary exhibits have been filed in
          the above-entitled cause, they are to be withdrawn ten days from the
          date of this notice.  Exhibits not withdrawn during this period will
          be disposed of.

          Please acknowledge receipt of these documents on the enclosed copy
          of this notice.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
          Received above mandate and record, if any, from the Clerk, U.S.
          Court of Appeals for the Seventh Circuit.
Date: _____ 10/31/07          S/ B HANSEN
(1071-120397)                           Deputy Clerk, U.S. District Court

CERTIFIED COPY

# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 06-2141

JOSEPH THOMPSON,

*Petitioner-Appellant,*

*v.*

RICK V. VEACH, Warden,

*Respondent-Appellee.*

Appeal from the United States District Court
for the Central District of Illinois.
No. 05 C 1267—**Joe Billy McDade**, *Judge.*

ARGUED MAY 23, 2007—DECIDED SEPTEMBER 7, 2007

Before EASTERBROOK, *Chief Judge,* and BAUER and
MANION, *Circuit Judges.*

BAUER, *Circuit Judge.* Joseph Thompson appeals the
district court's decision denying his petition for a writ of
habeas corpus pursuant to 28 U.S.C. § 2241. After Thomp-
son threatened his co-workers while participating in a
work release program, the United States Parole Commis-
sion ("USPC") rescinded Thompson's February 26, 2005
presumptive parole date and continued his case to June
of 2008. Thompson argues that the USPC violated his
rights in rescinding his parole by failing to provide him
with a statement of reasons that satisfies the require-
ments of the Due Process Clause of the Fourteenth Amend-

ment. Because we find that Thompson has no liberty interest in his parole, we affirm the denial of his petition.

## I. Background

In 1999, Thompson was convicted in the District of Columbia of attempted possession with intent to distribute cocaine and sentenced to a term of three to nine years' imprisonment. The USPC provided Thompson with a parole hearing in 2002 and later granted him a presumptive parole date of February 20, 2004.[1] Prior to his parole date, Thompson was assigned to a halfway house. On January 31, 2004, Thompson left the halfway house and did not return for six days. As a result of this behavior, the USPC rescinded Thompson's February 20, 2004 parole date and re-set it to February 26, 2005.

On January 5, 2005, Thompson was transferred to Benton County Jail in Foley, Minnesota where he participated in a work release program as an employee for the Dombrovski Meats Company. Ten days prior to his scheduled parole, Thompson was fired from Dombrovski Meats. Thompson's work supervisor contacted Mary Herman, the work release program coordinator at the Benton County Jail, and told her that Thompson was fired for making inappropriate remarks and threatening statements to his female co-workers. Dombrovski Meats also sent Herman an incident report, which detailed Thompson's

---

[1] In August of 1998, the USPC assumed the responsibility of making parole decisions for prisoners convicted of D.C. Code violations—such determinations are to be made according to the parole regulations of the District of Columbia. *See* National Capital Revitalization and Self-Government Improvement Act of 1997, Pub. L. No. 105-33, § 11231(a)(1), 111 Stat. 712, 745 (codified at D.C. CODE § 24-1231).

No. 06-2141                                                          3

behavior. The report states that Thompson told two of
his female co-workers that he "could have them" and
that he "could take care of their boyfriend or husband."
When the co-workers asked Thompson to explain these
statements, he told them that he does none of the work
himself, he "has connections", and "it will only take a
phone call." The report further states that Thompson told
another female co-worker, "You are at seven . . . . You have
[until] ten." When asked to clarify his "seven-ten" com-
ment, Thompson replied, "[A]t seven you get hurt real bad
and at ten you get killed." Thompson's learning curve
appears to be a flat line.

On February 23, 2005, the Federal Bureau of Prisons
filed an incident report against Thompson, charging him
with "threatening another with bodily harm" in violation
of Bureau of Prisons ("B.O.P.") Code 203. At Thompson's
hearing before the Center Disciplinary Committee ("CDC")
the next day, Thompson denied making any threaten-
ing statements to his co-workers. The CDC found that
Thompson had committed the acts as charged. A discipline
hearing officer concurred with the CDC's findings and
recommended that Thompson's parole be delayed by 30
days.

On February 25, 2005, the day before Thompson's
presumptive parole date, the Federal Bureau of Prisons
notified the USPC that Thompson had violated B.O.P.
Code 203. The USPC delayed Thompson's February 26
parole date pursuant to 28 C.F.R. § 2.86 and scheduled a
rescission hearing for June 29, 2005. At the rescission
hearing, Thompson claimed that the problems at his
workplace were due to ethnic differences between himself
and his co-workers. The hearing examiner found Thomp-
son's co-workers' statements to be more credible and
convincing than Thompson's denial and found that Thomp-
son had violated B.O.P. Code 203 by threatening another
with bodily harm.

The hearing examiner then calculated the amount of time that Thompson's parole should be extended pursuant to the rescission guidelines. The USPC has formulated guidelines, codified at 28 C.F.R. § 2.80, to facilitate parole decisions for D.C. Code offenders. Under the guidelines, the examiner must determine the severity of the prisoner's offense and the prisoner's Salient Factor Score ("SFS"), which is a predictor of a prisoner's likely success on parole. Thompson's hearing examiner determined that his behavior constituted new criminal conduct committed in the community. The examiner rated the behavior as Category One offense—the lowest (most severe) of the eight categories of offense severity—because it involved threatening bodily harm. The examiner calculated Thompson's SFS to be 3, indicating that Thompson's likelihood of success on parole was "poor." Based on these determinations, the examiner found Thompson's parole guidelines range to be 12 to 16 months and recommended a 16-month postponement of Thompson's parole. A second examiner subsequently reviewed the case and found that Thompson's SFS was 1 and not 3.[2] Because this revision did not change the classification of Thompson's likelihood of success on parole to a level other than "poor," the second examiner agreed with the first examiner's parole recommendation.

Following the hearing examiners' review, four USPC commissioners reviewed Thompson's case. One commissioner agreed with the rescission hearing examiners' recommendations. However, three Commissioners rejected the examiners' proposed 16-month sanction and recommended that the USPC continue Thompson's parole

---

[2] The second hearing examiner had more complete information concerning Thompson's prior convictions. Unlike the first examiner, the second examiner knew that Thompson had twelve prior convictions and six prior confinements of 30 or more days.

No. 06-2141                                    5

consideration to a rehearing on June 30, 2008 (36 months
from Thompson's June 29, 2005 rescission hearing). Under
the Code of Federal Regulations, the USPC "shall render
a decision granting or denying parole, and shall provide
the prisoner with a notice of action that includes an
explanation of the reasons for the decision." See 28 C.F.R.
§ 2.74. On December 1, 2005, the USPC did just that. It
denied Thompson parole and ordered a rehearing re-
garding Thompson's parole in June of 2008. In its notice
to Thompson, the USPC specified the following reasons
for its decision:

> You committed behavior that constitutes new criminal
> conduct in the community while on work release from
> a community corrections center, which is rated as
> Category One severity because it involved threaten-
> ing bodily harm.

> After consideration of all relevant factors and informa-
> tion presented, a decision above the guidelines is
> warranted because you are a more serious risk and
> poorer risk than indicated by your Salient Factor
> Score in that you have 12 convictions in 15 years, not
> including your juvenile record. You have previously
> failed in probation and failed on parole. Now while in
> a halfway house, you threatened female co-workers.

On September 12, 2005, Thompson filed a petition for
writ of habeas corpus in district court, challenging the
USPC's decision to rescind his parole date. The district
court denied the petition, finding that (1) the USPC did
not abuse its discretion by rescinding Thompson's Febru-
ary 26, 2005 presumptive parole date because Thompson
was not paroled at the time of the rescission hearing;
(2) the CDC's finding that Thompson violated B.O.P. Code
203 did not violate his due process rights; (3) the USPC
did not violate Thompson's due process rights by relying
on the CDC's findings of fact; and (4) the USPC did not

4

-3

6                                          No. 06-2141

abuse its discretion "by deciding to rescind Thompson's
parole by 16 months."[3] Thompson then filed this timely
appeal.


## II. Analysis

On appeal, Thompson argues that the USPC violated
his due process rights by failing to provide him with a
statement of reasons for denying his parole that either
satisfies the requirements of the Due Process Clause or
is statutorily sufficient. Thompson contends that the
statement of reasons is insufficient because it fails to
specify which local, state, or federal criminal offense that
he had committed. Our authority to review USPC parole
decisions is limited to determining whether the decision
constitutes an abuse of discretion. *Solomon v. Elsea*, 676
F.2d 282, 290 (7th Cir. 1982). A court of review need only
determine whether there is a rational basis in the record
for the Commission's conclusions embodied in its state-
ment of reasons. *Id.* (Citations omitted).

In order for due process protections to apply, there must
be a protectible liberty or property interest. *Id.* at 284
(*citing Averhart v. Tutsie*, 618 F.2d 479, 480 (7th Cir.
1980)). "There is no constitutional or inherent right for a
convicted person to be conditionally released before
expiration of a valid sentence." *Greenholtz v. Inmates of*

---

[3] The district court erroneously stated that the USPC had
rescinded Thompson's parole by 16 months. In fact, the USPC
had denied Thompson's parole and continued his case 36 months
to a rehearing in June of 2008. The district court found that
the USPC rationally based the length of Thompson's parole
rescission on his previous convictions and past failures to
comply with the rules of the institutions to which he was
confined.

No. 06-2141                                          7

*Neb. Penal & Correctional Complex*, 442 U.S. 1, 7, 99 S. Ct. 2100, 60 L. Ed. 2d 668 (1979). A valid conviction constitutionally extinguishes the prisoner's right to liberty for the duration of his sentence. *Id.* (*citing Meachum v. Fano*, 427 U.S. 215, 224, 96 S. Ct. 2532, 49 L. Ed. 2d 451 (1976)). However, a state may create a protected liberty interest in parole by enacting provisions governing parole that give a prisoner a reasonable expectation that he will be released if certain criteria are met. *See Heidelberg v. Illinois Prisoner Review Bd.*, 163 F.3d 1025, 1026 (7th Cir. 1998) (*citing Greenholtz*, 442 U.S. at 12; *Board of Pardons v. Allen*, 482 U.S. 369, 376, 107 S. Ct. 2415, 96 L. Ed. 2d 303 (1987)).

In *Greenholtz*, the United States Supreme Court reviewed Nebraska's state parole statute to determine whether it created a protectible liberty interest in parole. Nebraska's parole statute provides that "[w]henever the Board of Parole considers the release of a committed offender who is eligible for release on parole, it *shall* order his release unless it is of the opinion that his release should be deferred because [one of four specifically designated reasons are found]." *See* NEB. REV. STAT. § 83-1, 114 (1) (1976) (emphasis added). In *Allen*, the Supreme Court reviewed Montana's parole statute, which provides that "the board *shall* release on parole . . . any person confined in the Montana state prison . . . when in its opinion there is reasonable probability that the prisoner can be released without detriment to the prisoner or to the community." MONT. CODE ANN. § 46-23-201 (1985) (emphasis added). In both *Greenholtz* and *Allen*, the Supreme Court found that the statute at issue created a liberty interest in parole release because it contained mandatory language—the use of the word "shall"—that created a presumption that if certain criteria were satisfied, the prisoner would be released. *See Greenholtz*, 442 U.S. at 12; *Allen*, 482 U.S. at 377-78. Similarly, in *Solomon*, we

8                                        No. 06-2141

found that the federal parole statute, 18 U.S.C. § 4206(a), with its provision that if the statutory and regulatory guidelines are met the prisoner shall be released, gave the inmate an expectation of parole worthy of due process protection. *Solomon*, 676 F.2d at 285.

"Whether any other state statute provides a protectible entitlement must be decided on a case-by-case basis." *Greenholtz*, 442 U.S. at 12. Thompson argues that the District of Columbia's parole system creates a legitimate expectation of parole release and therefore provides a liberty interest protected by the Due Process Clause. The District of Columbia's parole statute provides in relevant part:

> Whenever it shall appear to the Board of Parole that there is reasonable probability that a prisoner will live and remain at liberty without violating the law, that his release is not incompatible with the welfare of society, and that he has served the minimum sentence . . . the Board *may* authorize his release on parole upon such terms and conditions as the Board shall from time to time prescribe.

D.C. CODE § 24-404(a) (2001) (emphasis added) (formerly D.C. CODE § 24-204(a)). Unlike the Nebraska, Montana, and federal parole statutes, the District of Columbia's parole statute does not contain mandatory language creating an expectancy of release that rises to the level of a constitutionally protected liberty interest. Indeed, the law is well established that the D.C. statutory scheme does not create any liberty interest in parole. *(See Blair-Bey v. Quick*, 151 F.3d 1036, 1047-48 (D.C. Cir. 1998) (D.C. parole regulations contain non-mandatory language and do not create a liberty interest in parole.); *Ellis v. District of Columbia*, 84 F.3d 1413, 1420 (D.C. Cir. 1996) (D.C. parole statute and regulations do not give any prisoners a liberty interest in parole.); *McRae v. Hyman*, 667 A.2d

9

1356, 1357 (D.C. 1995) ("The District's parole scheme
confers discretion to grant or deny parole and the scoring
system creates no liberty interest overriding the exercise
of that discretion.")). Because no liberty interest is at
stake, the USPC did not violate the due process clause
in denying Thompson's parole and extending his rehear-
ing by 36 months.

Thompson also argues that the USPC's decision to
rescind his parole date by at least 36 months constitutes
exceptionally arbitrary conduct which in itself violates
the due process clause. *See Blair-Bey*, 151 F.3d at 1048,
n.11 ("There is some authority for the proposition that
exceptionally arbitrary governmental conduct may in itself
violate the due process clause, whether or not a liberty or
property interest is at stake." (*citing Burkett v. Love*, 89
F.3d 135, 139 (3d Cir. 1996)). Here, the USPC's decision
was not arbitrary. It appropriately denied parole and
articulated a rational basis for ordering a rehearing
regarding Thompson's parole in June of 2008. Specifically,
the USPC explained that Thompson is a "more serious
risk" and "poorer risk" than indicated by his SFS because
of his threatening behavior towards his female co-workers
and his persistent failures in probation and on parole.[4]

Because Thompson does not have a protectible liberty
interest in parole and because the USPC's decision to

___

[4] Under the Code of Federal Regulations, the USPC has the
authority to render a decision above the guideline range if the
"prisoner is deemed to be . . . a poorer risk than indicated by the
salient factor score [or] a more serious parole risk." *See* 28 C.F.R.
§ 2.80(n)(2). The regulations specify that the offender is a
poorer parole risk than indicated by the SFS because of
"[u]nusually persistent failure under supervision" and
"[u]nusually extensive prior record" and that the offender is
a more serious risk because the "[c]urrent offense demon-
strates . . . criminal professionalism in the employment of
violence or threats of violence . . . ." *Id.*

10                                              No. 06-2141

deny Thompson parole and extend his rehearing 36 months was not arbitrary, Thompson's due process arguments fail.

Accordingly, the district court's decision to deny Thompson's petition for writ of habeas corpus is AFFIRMED.

A true Copy:

Teste:

Clerk of the United States Court of
Appeals for the Seventh Circuit

USCA-02-C-0072—9-7-07

# United States Court of Appeals

## For the Seventh Circuit

## Chicago, Illinois 60604

### JUDGMENT - WITH ORAL ARGUMENT

Date: September 7, 2007

BEFORE:

Honorable FRANK H. EASTERBROOK, Chief Judge

Honorable WILLIAM J. BAUER, Circuit Judge

Honorable DANIEL A. MANION, Circuit Judge

No. 06-2141

JOSEPH THOMPSON,
            Petitioner - Appellant
    v.

RICK V. VEACH, Warden,
            Respondent - Appellee

Appeal from the United States District Court for the
Central District of Illinois
No. 05 C 1267, Joe Billy McDade, Judge

        The judgment of the District Court is AFFIRMED,
    in accordance with the decision of this court entered on this date.

(1061-110393)

CERTIFIED COPY

A True Copy
Teste:

Clerk of the United
Court of Appeals